**Shelby Mark NEUGEBAUER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–97–0213–CR.**

Court of Appeals of Texas,
Amarillo.

June 16, 1998.

Rehearing Overruled July 13, 1998.

 

Warren L. Clark, Amarillo, for appellant.

James Farren, Criminal District Attorney (Kristy Wright, Robert A. Love II, Assistant Criminal District Attorney), Canyon, for appellee.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

BOYD, Chief Justice.

After his guilty plea to the offense of intoxication manslaughter, appellant Shelby Mark Neugebauer was sentenced to eight years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appealing that result, he contends that a justiciable issue exists as to whether the trial court reversibly erred by refusing to grant him a mistrial for the reason that the jury was manifestly prejudiced when the State asked him a single, unanswered question during cross-examination. Disagreeing with that contention, we affirm the judgment of the trial court.

In testifying during the punishment phase of the trial, appellant recounted the circumstances of his childhood, education, and work history. He also averred that his life has been significantly impacted since having killed someone while driving drunk. During his testimony, he said that since the accident he has volunteered at the Ronald McDonald House in Lubbock, entered an outpatient program at the Charter Plains Hospital to manage his alcohol abuse, and participated in two therapy groups to deal with his grief.

The impetus of this appeal concerns the State's first question upon cross-examination which asked: "Prior to this trial, your attorneys had—when they were getting ready for trial, they told you you were probably going to get probation from this jury, didn't they?" Before appellant answered, his attorney objected to the question and the trial court sustained the objection. The jury was then instructed to disregard the question. However, both appellant's motion for mistrial and motion for new trial were overruled. Thus, we must determine if the mere asking of the question was sufficient to impermissibly prejudice the jury so as to require a new punishment hearing.

In support of his position, appellant argues that by asking the question, the State impermissibly attempted to uncover plea bargain discussions protected by the attorney-client privilege and the evidentiary prohibition of plea bargain discussions. Moreover, he continues, because the sole purpose of the question was to inflame the jury in order to frustrate his opportunity to obtain probation from them, harm should be presumed requiring a new punishment hearing.

The State responds by asserting that the attorney-client privilege and the evidentiary prohibition did not apply. Moreover, it reasons, even if they did apply, by testifying about his motivation for performing charity work and attending counseling, appellant waived any privilege and opened the door to a searching cross-examination about his real motivation. Additionally, it reasons, even if he did not waive his privilege, "[o]ur rules of procedure and evidence should not countenance the use of the attorney/client relationship to prevent a jury from knowing the truth." Finally, the State contends, in any event, the question was not answered and the court's prompt instruction to disregard was sufficient to cure any error.

While the basis of appellant's actual motivation was certainly a valid area for cross-examination, in order to do so, it was not necessary or appropriate to impinge upon the zealously protected area of attorney-client conversations. The State has failed to show that neither the attorney-client privilege nor the evidentiary prohibition applied to the relevant conversation. It has also failed to show any waiver of those exclusionary doctrines.

■ Generally, the attorney-client privilege allows a client to refuse to disclose confidential communications concerning the rendering of legal services. Tex.R. Evid. 503(b).[1] *See generally Austin v. State,* 934 S.W.2d 672, 673–74 (Tex.Crim.App.1996) (dis-

cussing general principles of attorney-client privilege). Under this privilege, although it is the client's right to establish such a right existed, *Strong v. State,* 773 S.W.2d 543, 552 (Tex.Crim.App.1989), a party asserting the client waived the privilege has the burden of proving such waiver. *Carmona v. State,* 941 S.W.2d 949, 953–54 (Tex.Crim.App.1997).

■ Regarding plea bargains, the State is prohibited from admitting against the defendant any statement made to a prosecuting attorney during the course of plea discussions. Tex.R. Evid. 410(4).[2] It is only when the defendant offers statements made during plea bargain discussions that the State may, in the interest of fairness, offer other statements made during the same plea bargain discussions. *Abdel–Sater v. State,* 852 S.W.2d 671, 673 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); Tex.R. Evid. 410(4).

■ In this case, it is clear the question was an attempt to address a privileged communication between appellant and his attorney concerning the potential outcome of the case. It is also clear the question was directed to plea bargain discussions between the State and appellant's attorney. In those discussions, appellant's attorney advised the State that appellant was a "good kid" who had done everything the attorney asked him to. The State inferred from this comment that the attorney had asked appellant to participate in charitable work and counseling simply to improve his chances for probation, and not for the philanthropic and socially redeeming reasons usually associated with such activities. Thus, by its question, the State aimed to impeach appellant by impermissibly attempting to intrude into privileged and protected conversations.

Since the question invaded privileged and protected communications, the State, in order to establish that it did not ask the question in error, had the burden to show that

---

1. The Rules of Criminal Evidence and the Rules of Civil Evidence were blended into one code known simply as the Rules of Evidence. In their orders approving this blending, each of our high courts provided the amended rules "take effect March 1, 1998, and apply to all proceedings on or after that date." However, in its essentials, Rule 503(b) of the Rules of Evidence is the same

as former Rule 503(b) of the Rules of Criminal Evidence. Thus, the scope and application of the new rule would be the same as under the old one.

2. This rule is essentially the same as former Rule 410(3) of the Texas Rules of Criminal Evidence.

appellant waived his right to prevent disclosure. Yet, we conclude, the State has failed to make such a showing. The State argues that if it was not allowed to impeach appellant with pretrial strategic conversations with his attorney, the jury would have a misleading impression of appellant's true motive in engaging in his activities. However, while the State is entitled to considerable latitude conducting cross-examination, in doing so, it may not intrude into the sacrosanct attorney-client privilege long recognized and zealously protected in our Anglo–American jurisprudence. In attempting to do so, the State fell into error.

However, even so, the mere asking of an improper question will not necessarily require reversal. *Cavender v. State*, 547 S.W.2d 601, 603 (Tex.Crim.App.1977). It is well established that an error in propounding an improper question is generally cured by an instruction to disregard it. *Wheeler v. State*, 413 S.W.2d 705, 707 (Tex.Crim.App. 1967). Such instruction is not sufficient to cure any error only in the exceptional circumstance when it appears that the question "is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Id.*

In seeking reversal, appellant primarily relies upon *Womack v. State*, 834 S.W.2d 545 (Tex.App.—Houston [14th Dist.] 1992, no pet.), which was an appeal from a DWI conviction. In that case, the State asked the defendant how many times he had asked his attorney to tell the prosecutor he was not intoxicated at the time in question. *Id.* at 546. Before the question was answered, defense counsel objected on the basis the question invaded the attorney-client relationship. *Id.* at 547. The State countered with the argument that the defendant had waived the attorney-client privilege by taking the stand, and furthermore, only the client could invoke the privilege. The trial court overruled the objection and required the defendant to answer the question. *En route* to reversing the case, the appellate court reasoned that the defendant did not waive the privilege by taking the stand and that his attorney can claim the privilege on his behalf; therefore,

the trial court erred in overruling the objection. Thus, under those circumstances, the appellate court concluded, harm was presumed and reversal mandated. *Id.*

Although appellant argues *Womack* stands for the proposition that reversible harm is presumed from the mere asking of a prosecutorial question which invades the attorney-client privilege, we disagree. The harm presumed in *Womack* arose from the trial court's action in overruling the objection and requiring the defendant to give an answer which did impinge upon the attorney-client privilege.

To obtain reversal, appellant must have shown that the mere asking of the question so inflamed the jury that no instruction by the court could cure its effect. *Wheeler*, 413 S.W.2d at 707. It is only in rare and unusual instances that a conviction is reversed solely because an improper question was asked. *Cavender*, 547 S.W.2d at 603. The question we consider here was not of that extreme and unusual nature. Thus, the trial court's prompt instruction to disregard was sufficient to cure any error.

Accordingly, appellant's issue does not present reversible error and is overruled. The judgment of the trial court is affirmed.