### In re VALERO ENERGY CORPORATION, et al., Relators.

### No. 14–98–00501–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 6, 1998.

J. Clifford Gunter, III, Houston, for relator.

Craig B. Glidden, Houston, for respondent.

Before AMIDEI, DRAUGHN and HILL,* JJ.

## OPINION ON MOTION FOR REHEARING

AMIDEI, Justice.

This petition for writ of mandamus arises from a suit for breach of fiduciary duty brought by the real party in interest, Teco Pipeline Company ("Teco") against relators, Valero Transmission, L .P., Teco's fellow joint venturer, and other Valero entities.[1] Valero claims the trial court abused its discretion in ordering Valero to produce documents protected by the attorney-client privilege. We agree. Therefore, we grant relators' motion for rehearing and conditionally grant the writ.

## I. BACKGROUND

In 1985, Valero entered into an operating agreement with Northern Texas Intrastate Pipeline Company ("Nortex"), a subsidiary of Internorth, Inc., to establish a joint venture to operate the Trans Texas Pipeline, a 337 mile natural gas pipeline stretching from Waha in West Texas to New Braunfels. Un-

der the operating agreement, each party owned an undivided one-half interest in the pipeline. Because the purpose of the joint venture was to maximize the pipeline's capacity, the parties competed with each other to secure customers for the transportation of gas. The parties were free to make their own contracts and set their own price for the transportation of gas. The parties, however, had to account to the joint venture for use of the pipeline by paying a tariff set by the operating agreement. Each party's profit was based on the difference between the price charged to customers and the tariff paid to the joint venture. Internorth subsequently merged with Houston Natural Gas to form Enron. Valero filed suit in federal court to block this merger. The dispute was resolved by settlement, reaffirming Valero's right of first refusal under the operating agreement with regard to any sale of Nortex's one-half interest in the pipeline. *See West Texas Transmission, L.P. v. Enron Corp.* 907 F.2d 1554, 1556 (5th Cir.1990). In January 1988, Teco purchased the stock of Nortex from Enron. Under the terms of the stock purchase agreement, Teco became a joint venture partner with Valero in accordance with the operating agreement. Valero also tried unsuccessfully to block this purchase in proceedings before the FTC and federal court. *See id.* at 1558–61.

On April 24, 1996, Teco filed suit in the 215th District Court of Harris County and alleged that Valero diverted opportunities and profits belonging to the joint venture. Teco asserted causes of action for breach of fiduciary duty, fraud, tortious interference, conspiracy, and professional malpractice. Teco also sought an accounting of assets and property of the joint venture and a declaratory judgment of the parties' rights and obligations under the operating agreement. Valero answered and moved to compel arbitration under federal and state law pursuant to an arbitration clause in the operating agreement. Teco propounded discovery requests relating to the issue of arbitration.

---

* The Honorable Joe. L. Draughn and the Honorable John Hill sitting by assignment.

1. Valero Transmission L.P. acquired its interest in the joint venture from Valero Transmission Company. For the sake of simplicity, we refer to all Valero entities collectively as "Valero ."

Shortly thereafter, Valero filed objections to most of Teco's requests based on the attorney-client privilege. Teco filed a motion compel, in part requesting that Valero prepare of a log of the alleged privileged documents. After a hearing on August 5, 1996, Valero provided the privilege log. Two weeks later, Teco filed a motion to compel production of the "so-called" privileged documents. Valero filed a response and submitted the affidavit of in-house attorney, David Waterson. At a hearing on August 27, 1996, Valero argued the thirty-seven documents described in the log were privileged because they were prepared by Valero's in-house attorneys solely for Valero, not the joint venture. Teco argued the documents fell within the joint client exception to the attorney-client privilege because it was billed for legal services performed by Valero's in-house attorneys for the joint venture. The trial court deferred its ruling on Teco's motion to allow Valero to submit the documents for an *in camera* inspection and file additional affidavits.

After a hearing on September 9, 1996, the trial court denied Valero's motion to compel arbitration. At the conclusion of that hearing, the trial court took up Valero's privilege objections. The court stated it reviewed the documents *in camera* and was inclined to overrule the objections to twenty-two of the documents on the log, but needed further clarification. At Valero's request, the trial court delayed its ruling until Valero provided the necessary clarification. Two days after the hearing, Valero filed a "confidential memorandum" explaining the nature of each of the 22 documents. Valero also submitted the affidavits of Waterson, accountant Wayne Schulke, and in-house attorney, Marcy Collins.

On the same day it filed the memorandum, Valero moved to stay the trial court proceedings pending an interlocutory appeal of the order denying arbitration. Teco filed a response to this motion and a motion to compel certain "overdue" discovery. Teco also filed a supplemental memorandum on the privi-

lege issue, along with the affidavit of its vice-president, John Davis. On September 16, 1997, the trial court denied Valero's motion to stay.

On October 7, 1996, Valero filed in this court a motion for leave to file petition for writ of mandamus and an interlocutory appeal from the trial court's order denying arbitration. A week later, we granted Valero's motion to stay the trial court proceedings. On December 9, 1996, we overruled Valero's motion for leave.[2] Valero's interlocutory appeal, however, is still pending. On March 26, 1998, this court lifted the stay as to discovery only. Teco then filed a "renewed" motion to compel production of the "so-called" privileged documents. On April 27, 1998, following a hearing, the trial court signed an order overruling Valero's objections to production of 22 of the 37 documents listed on the privilege log. In the same order, the court sustained Valero's objections to the remaining 15 documents. On May 1, 1998, Valero filed this petition for writ of mandamus complaining of the April 27th order. Three days later, we stayed the trial court proceedings until "final decision of this Court on [Valero's] petition for writ of mandamus." On May 21, 1998, we denied Valero's petition based on its failure to bring forth the *in camera* documents. The next day, Valero filed a motion for rehearing and motion for immediate temporary relief from the April 27th order. Along with its motions, Valero submitted the *in camera* documents under seal. On May 26, 1998, we again stayed the April 27th order, pending determination of Valero's motion for rehearing.

## II. ANALYSIS

### A. Mandamus

██ Mandamus relief is available if the trial court violates a duty imposed by law or clearly abuses its discretion, either in resolving factual issues or in determining legal principles when there is no other adequate remedy by law. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court

**2.** On May 8, 1998, the Texas Supreme Court dismissed Valero's motion for leave without prej-
udice.

clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). When alleging that a trial court clearly abused its discretion in its resolution of factual issues, the party must show the trial court could reasonably have reached only one decision. *Id.* at 918. As to determination of legal principles, a clear abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. *See Walker*, 827 S.W.2d at 840. Here, Valero complains the trial court misapplied the law by ordering the production of documents protected by the attorney-client privilege. Such a complaint is appropriate for mandamus.

■■■ Furthermore, Valero is without an adequate remedy by appeal. Mandamus is intended to be an extraordinary remedy, only available in limited circumstances "involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989). An appellate remedy is not inadequate merely because the party may incur more expense and delay than in obtaining the writ. *See Walker*, 827 S.W.2d at 842. The appellate remedy may be inadequate in three situations: (1) when the appellate court cannot cure the trial court's discovery order, such as where the trial court orders disclosure of privileged documents; (2) where the party's ability to present a viable claim or defense is vitiated or severely compromised; and (3) when the trial court disallows discovery and the missing discovery cannot be made part of the appellate record, thereby precluding appellate review. *Id.* at 843. Here, the trial court ordered the production of allegedly privileged documents. Such a discovery error, if any, materially affects the rights of the aggrieved party and cannot be cured on appeal. *Id.*

### B. Attorney–Client Privilege

■■■ The attorney-client privilege protects from disclosure confidential communica-

tions between a client and his or her attorney "made for purposes of facilitating the rendition of legal services to the client . . . ." *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex.1996) (citing former TEX. R. CIV. EVID. 503(b), *amended by* Order of October 20, 1997, Misc. Docket No. 97–9184, 60 TEX. BAR. J. 1129 (Dec.1997)) (now codified at TEX. R. EVID. 503(b) (Vernon Pamph.1998) (effective March 1, 1998)). This privilege allows "unrestrained communications and contact between an attorney and client in all matters in which the attorney's professional advice or services are sought, without fear that these confidential communications will be disclosed by the attorney voluntarily or involuntarily in any legal proceeding." *Huie*, 922 S.W.2d. at 922 (quoting *West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978)). The privilege attaches to the complete communication between attorney and client, including not only legal advice but also factual information. *See Huie*, 922 S.W.2d at 923; *Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 589 (Tex.App.—Dallas 1994, orig. proceeding). The subject matter of the information contained in the communication between attorney and client is irrelevant when determining whether the privilege applies. *See Marathon Oil*, 893 S.W.2d at 589.

■■■ The party resisting discovery bears the burden of proving any applicable privilege. *See Huie*, 922 S.W.2d at 926. To make a prima facie showing of the applicability of a privilege, a party must plead the particular privilege, produce evidence to support the privilege through affidavits or testimony, and produce documents if the trial court determines that an *in camera* review is necessary. *See Marathon Oil*, 893 S.W.2d at 590–91. Although Valero complied with all of these requirements, Teco contends Valero failed to make a prima facie showing of the applicability of the privilege. In support of this contention, Teco attacks the Valero affidavits. Although there are problems with these affidavits, we conclude that Valero has established a prima facie claim of privilege. The affidavits of Waterson and Collins are based on personal knowledge and are uncontroverted.[3] *Cf. Humphreys v. Caldwell*, 888

---

**3.** Schulke's affidavit concerning the billing by Valero attorneys was controverted by Teco Vice-

President, John Davis.

S.W.2d 469, 470–71 (Tex.1994) (affidavit not based on personal knowledge is insufficient); *see IMC Fertilizer, Inc. v. O'Neill*, 846 S.W.2d 590, 592 (Tex.App.—Houston [14th Dist.] 1993, orig. proceeding) (uncontroverted affidavits sufficient to support assertion of privilege); *Shell Western E & P, Inc. v. Oliver*, 751 S.W.2d 195, 196 (Tex.App.—Dallas 1988, orig. proceeding) (same). These affidavits are attached to Valero's confidential memorandum further explaining the nature of the documents listed on the privilege log. The affidavits, when read together with the privilege log and memorandum, are sufficient to establish a prima facie claim for the application of the attorney-client privilege. Even if that were not the case, Valero established the privilege by the documents themselves. As recognized in *Marathon Oil*, "often the allegedly privileged documents may be the only the evidence substantiating the privilege claim." 893 S.W.2d at 590. A review of the twenty-two documents subject to the trial court's April 27th order confirms their confidential nature as described in the privilege log and confidential memorandum. Most, if not all, of the documents are interoffice memorandums or notes exchanged between Valero's counsel and its representatives. Based on those documents, we hold that Valero made a prima facie showing of the applicability of the privilege. Therefore, the burden shifted to Teco to refute the privilege. *See id.* at 591

## C. Joint Client Exception

■ Texas Rule of Evidence 503(d)(5) sets forth the joint client exception to the attorney-client privilege. The rule states "there is no privilege . . . as to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among the clients." TEX. R. EVID. 503(d)(5) (Vernon Pamph.1998) (*amended by* Order of October 20, 1997, Misc. Docket No. 97–9184, 60 Tex. Bar J. 1129 (Dec.1997) (effective March 1, 1998)). Thus, under this exception, a communication is not privileged in litigation between clients if (1) it is relevant to a matter of common interest among the clients, and

(2) is made by, or to a lawyer retained, or consulted, in common. *See Marathon Oil*, 893 S.W.2d at 592–93.

Here, Teco failed to prove that it and Valero were joint clients. There is no written agreement hiring Valero's in-house lawyers to represent Teco or the joint venture. The evidence shows only that Valero's in-house counsel made numerous regulatory filings for the joint venture and advised the joint venture on the legality of another pipeline company's name change. These legal services were rendered on behalf of the joint venture by Valero's attorneys, who were representing Valero in its capacity as pipeline operator. This is closely analogous to legal services rendered on behalf of a trust by an attorney for the trustee. *See Huie*, 922 S.W.2d at 921–22. Though *Huie* does not address the joint client exception, it is instructive.

In that case, a trust beneficiary sued the trustee for breach of fiduciary duty. 922 S.W.2d at 922. When the beneficiary obtained a court-order compelling testimony by the trustee's attorney about the management and business dealings of the trust, the trustee sought mandamus relief. *Id.* The court held that the attorney-client privilege protected communications between a trustee and his attorney, even though the trustee was a fiduciary for the beneficiary. *Id.* at 923–24. The court explained:

> The attorney-client privilege serves the same important purpose in the trustee-attorney relationship as it does in other attorney-client relationships. A trustee must be able to consult freely with his or her attorney to obtain the best possible legal guidance. Without the privilege, trustees might be inclined to forsake legal advice, thus adversely affecting the trust, as disappointed beneficiaries could later pore over the attorney-client communications in second-guessing the trustee's actions. Alternatively, trustees might feel compelled to blindly follow counsel's advice, ignoring their own judgment and experience.

*Id.* at 924.

The court determined that applying the privilege did not affect the trustee's duty to

disclose material facts, or to provide a full accounting to the beneficiary, even as to information conveyed to the trustee's attorney, so long as it did not reveal confidential attorney-client communications. *Id.* at 923.

Similar to a trustee and beneficiary, joint venturers owe one another a fiduciary duty with respect to dealings within the scope of the joint venture. *See Rankin v. Naftalis,* 557 S.W.2d 940, 944 (Tex.1977). Like a trustee, Valero, as the pipeline operator, was responsible for performing all the functions necessary for the pipeline's operation. These functions were to be performed in the name of the joint venture and without the prior approval of the joint venture's management committee. Valero was also obligated to report on operations to the joint venture's management committee. Ergo, like the trustee in *Huie,* Valero was entitled to seek confidential legal advice from its in-house attorneys concerning its duties as pipeline operator, even though it owed a fiduciary duty to the joint venture. Affording protection of such confidential legal advice will not prevent Teco from obtaining a full accounting or disclosure of material facts concerning the pipeline's operations.

Teco argues that *Huie* is inapplicable because there the attorney did not represent the trust while here Valero's attorneys represented the joint venture. We see little distinction between a trustee who hires outside counsel to manage a trust on behalf of beneficiaries and pipeline operator who uses in-house counsel to operate a pipeline on behalf of a joint venture. In any event, in support of its "joint representation" argument, Teco points to the affidavit of its vice-president, John Davis, which states that services rendered by Valero attorneys were billed to the joint venture. Based on his review of the monthly overhead calculations for the joint venture for the years 1991 through 1994, Davis' "understanding" was that the joint venture paid for an "allocable portion of all the legal services" because "all of those services were for the benefit of" the joint venture. The fact that Valero's attorneys rendered undefined legal services to the joint venture or that Teco paid for some undisclosed portion of the joint venture's legal

expenses, without more, is insufficient to establish that Teco and Valero were joint clients.

The documents themselves confirm that Teco and Valero were not joint clients. As we stated, nearly all of the documents are confidential interoffice memorandums or notes exchanged between Valero's counsel and its representatives. Some of the documents are totally innocuous, saying nothing about the pipeline's operations or the joint venture. Other documents pre-date the Teco sale and discuss Valero's right of first refusal to Enron's sale of its pipeline interest and the potential effect of a sale to Teco. Still other documents, prepared after the Teco sale, discuss the effect of the sale, including the effect, if any, of prior Valero agreements on Teco. These documents also discuss Valero's position in negotiations between Valero and Teco on various amendments to the operating agreement and other agreements. One document expressly refers to the fact that Teco was represented by its own counsel. Clearly, the documents in question establish that Teco and Valero were not joint clients.

Nevertheless, Teco insists that because the joint venture is a matter of common interest between Teco and Valero, any communication relating to the joint venture falls within the joint client exception. Teco relies on *Scrivner v. Hobson,* 854 S.W.2d 148 (Tex. App.—Houston [1st Dist.] 1993, no writ). In *Scrivner,* former clients sued their attorney for malpractice in settling a multiple plaintiff toxic tort case without their consent and incorrectly calculating their share of the aggregate settlement. 854 S.W.2d at 149. The clients sought "certain parts of the attorney's file, including information regarding the actual basis for calculations of the amounts due each plaintiff." *Id.* After the trial court granted a protective order based on the attorney-client privilege, the clients sought mandamus relief. *Id.* at 149–50. The court of appeals granted relief, holding that the documents fell within the joint client exception because they "addressed matters of interest common to all the plaintiffs involved in the aggregate settlement." *Id.* at 152. The court did not hold that all of the attorney's

communications relating to the case were discoverable, but only those documents relating to calculation of the settlement, the only documents sought by the clients. *See id.*

In any event, *Scrivner* is inapplicable here because Teco and Valero were joint venturers, not joint clients. Thus, not every communication by Valero's in-house counsel relating to the joint venture necessarily concerned a matter of common interest. This is not to say the joint venture was not a matter of common interest to Teco and Valero; rather, Valero was entitled to seek confidential legal advice from its in-house counsel concerning its individual rights and duties as both pipeline operator and joint venturer. Teco claims that such an interpretation of the joint client exception creates a potential for conflict of interest under the disciplinary rules. *See generally* TEX. DISCIPLINARY R. PROF. CONDUCT 1.06 (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. (Vernon Supp.1998) (STATE BAR RULES art. X, § 9). This argument assumes Teco and Valero were joint clients when the facts of this case simply do not support that conclusion. Therefore, we see no potential for conflict so long as Valero's attorneys do not undertake representation of both Teco and Valero.

Because Teco failed to prove the applicability of the joint client exception, we conclude that the documents in question are protected by the attorney-client privilege. Therefore, we hold the trial court clearly abused its discretion in ordering the production of these documents. Accordingly, we grant relators' motion for rehearing and conditionally grant the writ of mandamus. We are confident the trial court will vacate its April 27, 1998, order compelling production of the documents in question. If the court fails to do so, the writ will issue.

Motion For Rehearing Granted, Petition Conditionally Granted and Opinion filed August 6, 1998.