Kenny Dewayne TAYLOR, Appellant,

v.

STATE of Texas, Appellee.

Nos. 11–99–00004–CR to
11–99–00006–CR.

Court of Appeals of Texas,
Eastland.

May 25, 2000.

Rehearing Overruled June 22, 2000.

Tim Copeland, Abilene, for appellant.

James Eidson, Kollin Shadle, Crim. Dist. Atty., Abilene, Robert R. Rennich, Asst. Atty. Gen., Austin, for appellee.

Panel consists of: ARNOT, C.J., and McCALL, J., and DICKENSON, S.J.*

OPINION

BOB DICKENSON, Senior Justice (Retired).

The jury convicted Kenny Dewayne Taylor of three felony offenses and as-

* Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

sessed his punishment at confinement for 50 years for the aggravated robbery of Koscina Lashae Pennye (No. 11–99–00004–CR); confinement for 14 years for the burglary of a habitation (No. 11–99–00005–CR); and confinement for 40 years for the aggravated robbery of William Richard Myrick (No. 11–99–00006–CR). We reverse the judgments of the trial court and remand the causes.

## Issues Presented

Appellant argues in three points of error that: (1) the evidence is not sufficient to corroborate the testimony of the accomplice; (2) the trial court erred in allowing the State to question appellant about discussions which occurred during plea negotiations; and (3) the trial court erred in not allowing proof of the "entire content of the plea negotiations" after it had erroneously allowed the State to "open the door" to the plea negotiations.

## The Accomplice Testimony

Carlene Marie Fulton was the "accomplice" witness who testified for the State that appellant and two other friends, Michael Sneed and Rodney Reid, committed all three felony offenses for which appellant was convicted. Fulton was 21 years old at the time of trial, and she had lived in Abilene all her life. She said that she and appellant were "close" and that they were a "little bit more than friends." She knew Sneed and Reid through appellant. All four of them were together on the night the three felony offenses were committed. She was driving the car.

Fulton testified that she had been smoking marihuana on a daily basis; that, when she finished her classes at Cisco Junior College, Abilene Campus, on the morning of January 22, 1997, she went with appellant to get some marihuana; that she wait-

ed in the car while appellant went into the house [1] to get the marihuana; and that, after they smoked the marihuana, she dropped appellant at his friend's house and went to her afternoon class. That same day, after her evening class, she went home about 9:30 p.m. Appellant called her on the telephone to see if she could help him "move some stuff." [2] She went to appellant's house, and he asked her to wait while he went inside to talk to his mom. Appellant told her that Sneed and Reid "were going to be coming with the stuff." They were carrying electronic equipment which they put into the back of her car; appellant came back out when Sneed and Reid were "almost done." Appellant asked her to take the equipment over to her house. All of them unloaded the equipment and took it into her house.

Fulton testified that later that evening the four of them went to the house where appellant had bought the marihuana that morning. It was about midnight when all three of the men got out of the car and walked in the direction of the house. Appellant told her to wait in the car. When they came back, the three men had a 40–ounce bottle of beer and some candy. They did not have any marihuana. All four of them went to a house owned by one of appellant's friends. They went inside for 15 or 20 minutes. While they were there, appellant gave Fulton a pendant on a chain; and she put it around her neck. They then decided to "do a beer run." That is what Fulton defined as: "You go to a store and just take the beer and run." They wanted her to drive them to "do this beer run."

Appellant told her to go to the Allsup's Store on Grape Street.[3] She said that it was about 2:00 a.m. and that appellant told her where to park. Appellant, Sneed, and

1. This is where the aggravated robbery of Pennye occurred in the early morning hours of the next day (Cause No. 11–99–00004–CR).

2. This was the property stolen in the burglary of a habitation (Cause No. 11–99–00005–CR).

3. This is where the aggravated robbery of William Richard Myrick occurred (Cause No. 11–99–00006–CR).

Reid got out of the car. She waited in the car, and the three men walked in the direction of the Allsup's Store. Later, they ran back, and one of them said they "just robbed that Allsup's." They had some "Chee-tos," several pairs of gloves, several packs of cigarettes, some money, and a little red peanut patty. Later that night, Fulton was arrested, and she decided to cooperate with the police and to give them a statement about what she knew. She testified that she voluntarily gave the police the names of the three men who were in the car with her. She also testified that she was indicted for the two aggravated robberies and that she had made a "plea bargain" for ten years straight probation in exchange for her truthful testimony. Her case is still pending, but she was released with an ankle monitor and an agreement for random drug testing. She reports to her probation officer once each week, and it had been 18 months (when she testified at this trial) since she smoked marihuana.

On cross-examination, she admitted that she and appellant had been "lovers." She testified that she did not see appellant with a handgun that night and that appellant did not have anything in his hands when the three men came back from the second robbery. She said that appellant was carrying a Tupperware bowl with candy when they came back from the first robbery. She also testified that her understanding of her "deal" with the State was that the lawyers would argue in front of the trial court as to whether she got "straight probation" or "deferred" adjudication.

On re-direct examination, she said that she did not consider appellant "like boyfriend and girlfriend" but did consider that they were "more than friends." She said that they did have a sexual relationship.

*Corroboration of Accomplice Testimony*

Kyle Elliott testified that he was the owner of the house which was burglarized. Elliott said that he did not know appellant

on January 22, 1997, when his house was burglarized; however, he did "know him by face" at that time because he had seen him in the area. They were neighbors. Elliott identified photographs showing the damage to his home and showing items stolen from his home and found in Fulton's home. Elliott also testified that appellant's sister[4] returned "a bag full of videos" to him. Elliott also identified Sneed and Reid, when they were brought into the courtroom, as the two men that he saw on a regular basis with appellant in appellant's front yard.

Koscina Lashae Pennye testified that she was "held up" about midnight on January 23, 1997, when three guys barged in with guns. All of them were wearing ski masks which covered their faces. They threatened her, and she thought that they were going to shoot her. They took a gold Turkish necklace with a marihuana pendant, and Pennye identified the necklace which was recovered from Fulton. They also took a 40-ounce bottle of Old English Malt Liquor Beer, some cigarettes, and a Tupperware box of mixed chocolates.

Darrell Glenn testified that Pennye was living with him in January of 1997 when she was robbed; that he came home from work that night and saw three guys running out from the side of his house; that all three of them were carrying guns; and that, when he went into the house, his girlfriend was upset and crying. The telephone line had been cut. Glenn identified appellant as the man who had come to his house on the morning before the robbery to buy $10.00 worth of marihuana.

Gloria Diane Newton testified that she was the manager of the area which includes the Allsup's Store on Grape Street, and she explained Allsup's security system and its inventory control system. She also identified the items which had been recovered from Fulton by their codes as items which had been taken in the robbery of that store.

4. Other evidence indicated that this was appellant's aunt, rather than his sister.

Cory Deshawn Mack testified that he had been friends with appellant since they were students in junior high school and that Pennye is Mack's cousin. On the night that Pennye was robbed, Mack was with appellant and Reid when one of them said that they had gone into Glenn's house, that Mack's cousin was there, but that they did not hurt her. Mack was not sure which one made the statement, but both of them were present when the statement was made.

William Richard Myrick testified that he was the clerk in the Allsup's Store on Grape Street during the early morning hours of January 23, 1997, when it was robbed. Myrick said that two men, wearing ski masks, came into the store. The shorter man pointed a gun at his head, ordered him to open the cash register, and demanded "all your money." The shorter man also took 10 or 12 packs of Newport cigarettes.

Lawanda Taylor testified that she was appellant's sister, that she saw Sneed and Reid on the night of the burglary carrying things from the house across the street from where their mother lived, that she saw them putting the stolen property into Fulton's car, and that she told her mother to call the police.

### Contradiction of Accomplice Testimony

Reid testified that he had previously pleaded guilty to these three offenses. Reid's testimony implicated Sneed and Fulton, but he testified that appellant was not involved in any of the offenses.

Appellant testified in his own behalf. He was 23 years old at the time of trial, and he had been in the Taylor County Jail for two years. Appellant admitted that he was with Sneed, Reid, and Fulton on the night the three offenses were committed, but he denied any involvement in the offenses. He testified that he was "not even paying attention" to what the other three were doing at the time the three offenses were committed.

### Sufficiency of Evidence to Corroborate the Accomplice Testimony

■ The jury is the "exclusive judge of the facts" in the trial of a criminal case. See TEX. CODE CRIM. PRO. ANN. art. 36.13 (Vernon 1981). Consequently, the jury was free to resolve any conflicts in the testimony; it was not required to believe appellant's testimony or that of his friend, Reid. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Cr.App.1997).

■ The testimony summarized above from Elliott, Pennye, Glenn, Newton, Mack, Myrick, and Taylor connects appellant to all three offenses. This testimony shows, not only that appellant was present before and after each of the three offenses, but it also shows that he participated as a party in at least one offense and is criminally responsible under TEX. PENAL CODE ANN. § 7.02 (Vernon 1994) for the conduct of Sneed, Reid, and Fulton because he aided them in the commission of all three offenses. This is sufficient corroboration under TEX. CODE CRIM. PRO. ANN. art. 38.14 (Vernon 1979). See *Reed v. State*, 744 S.W.2d 112, 125–26 (Tex.Cr.App.1988). The first point of error is overruled.

### Testimony Concerning Plea Negotiations

During the State's cross-examination of appellant, the prosecutor told the court that he had a matter for the court to consider in the absence of the jury. After the jury left the courtroom, the prosecutor told the court that he wanted to impeach appellant with proof of a statement which appellant had made to the prosecutor and his investigator during the course of their plea negotiations. The reporter's record shows the following statements made by the prosecutor and by the court:

[PROSECUTOR]: I went into the jury room right in here along with my investigator. . . . [Appellant] here was discussing. . . what my plea recommendation was in this case. And [appellant] repeatedly said to us that he felt that

going to prison was *too severe for some-one's first offense.* And I want to be able to ask [appellant] whether, in fact, he committed these crimes. And if he says, no, I want to be able to impeach him with...his statements made in the presence of my investigator....I'm not offering them for the truth of the matter asserted, but I'm offering them to impeach him if he denies responsibility for these crimes.

And he didn't have to speak to us that day. He made the choice. He wanted to do that. Generally, plea negotiations are not admissible, but if a defendant later takes the stand and lies, discussions made at plea negotiations are contradictory of what he says in court, then they can be introduced for that purpose. (Emphasis added)

After defense counsel pointed out that these were "plea negotiations," the trial court ruled that it would "allow that for impeachment." Defense counsel said: "Note our objection." The jury came back into the courtroom, and the prosecutor continued his cross-examination of appellant. After appellant answered: "No, sir, I didn't" to questions as to whether he committed each of the three offenses, the reporter's record shows the following questions and answers:

[PROSECUTOR]: Okay. Isn't it true, sir, that one week ago in the morning hours in the presence of my investigator...you made the statement that a prison sentence is too severe for someone's first offense?

✻ ✻ ✻ ✻ ✻ ✻

[PROSECUTOR]: Didn't you say that a prison sentence was too severe for your first time?

[APPELLANT]: Exactly. I said exactly, I don't feel I should go to prison for this being my first time and Carlene's first time and she's getting ten years probation.

■ TEX.R.EVID. 410 specifically provides that, except as otherwise provided "in this rule," evidence of plea discussions and related statements are "not admissible against the defendant who...was a participant in the plea discussions." The only exception provided "in this rule" reads in full as shown:

However, such a statement is admissible in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it.

That exception is not applicable because the plea discussions had not been introduced into evidence before the special prosecutor argued that he could impeach the witness with what he had said during the plea negotiations. This is clearly error. The only question is whether it is reversible error under TEX.R.APP.P. 44.2(b). See and compare *Neugebauer v. State*, 974 S.W.2d 374 (Tex.App.—Amarillo 1998, pet'n ref'd); *Abdel–Sater v. State*, 852 S.W.2d 671 (Tex.App.—Houston [14th Dist.] 1993, pet'n ref'd).

■ The Fourteenth Court of Appeals correctly noted in *Abdel–Sater v. State, supra* at 673:

Generally, statements made in the course of plea discussions are inadmissible. The exception to this general rule applies *only* when another statement made in the course of plea discussions already has been admitted. TEX.R.CRIM.EVID. 410.

■ The Amarillo Court of Appeals then said in *Neugebauer v. State, supra* at 376–77:

Regarding plea bargains, the State is prohibited from admitting against the defendant any statement made to a prosecuting attorney during the course of plea discussions. It is only when the defendant offers statements made during plea bargain discussions that the State may, in the interest of fairness,

offer other statements made during the same plea bargain discussions.

\* \* \*

However, even so, the mere asking of an improper question will not necessarily require reversal. It is well established that an error in propounding an improper question is generally cured by an instruction to disregard it. (Citations omitted)

In the case now before us, the court overruled the objection and permitted the State to offer proof of statements during the course of plea negotiations in violation of Rule 410. Then, during the final closing argument, one of the special prosecutors argued to the jury that appellant admitted to the other special prosecutor, when appellant was testifying, that he said that he was wanting probation because it was his "first time." Then the special prosecutor said: "If that's not an admission of guilt, I don't know what it is."

It seems clear that the error in admitting proof of appellant's statements during the plea negotiations did affect appellant's "substantial rights" and that the error cannot be disregarded. See Rule 44.2(b). The second point of error is sustained.[5]

### This Court's Ruling

The judgments of the trial court are reversed, and the causes are remanded to the trial court for a new trial.

---

5. We need not discuss the third point of error. It is not "necessary to final disposition of the appeal" because of our holding on the second point of error. See TEX.R.APP.P. 47.1.