**Joseph Bernard HARRIS and Roderick Traverse Walker, Appellants,**

v.

**The STATE of Texas, Appellee.**

Nos. 14–99–00722–CR, 14–99–00723–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 10, 2001.

Rehearing Overruled Aug. 9, 2001.

Discretionary Review Refused Nov. 21, 2001.

Tom Moran, Houston, for appellants in No. 14-99-00722-CR.

Carmen Castillo Mitchell, Houston, for appellees in no. 14-99-00722-CR.

Allen C. Isbell, Houston, for appellants in no. 14-99-00723-CR

Allen Curry, Houston, for appellees in no. 14-99-00723-CR

Panel consists of Justices ANDERSON, FOWLER, and EDELMAN.

## MAJORITY OPINION

FOWLER, Justice.

Appellants Joseph Harris and Roderick Walker entered guilty pleas to the charge of aggravated robbery. A jury sentenced each of them to 15 years' confinement in the Texas Department of Corrections, In-stitutional Division. Harris complains in two issues for review that the trial court erred in overruling objections to two statements made by the prosecutor during his closing argument. Walker complains in two points of error that the trial court erred in overruling objections to two questions which he claims violated the attorney client privilege. As we explain below, we reverse and remand Harris's punishment, but we affirm Walker's punishment.

## FACTUAL BACKGROUND

On the morning of February 5, 1999, Harris and Walker entered the Get–N–Go Convenience Store in Humble, Texas. Harris wore sunglasses, a hood, and carried an unloaded shotgun into the store, while Walker wore a mask and carried an unloaded pistol. Once inside the Get–N–Go, they robbed Sam Varani, the store clerk. After a brief search, the police found Harris and Walker in Walker's nearby apartment. At this time, the police officers recovered the weapons used in the crime, the mask and hood, and the stolen money.

The officers took Harris and Walker to the convenience store where two witnesses identified them. The officers then arrested them, whereupon Harris and Walker each gave voluntary, written confessions to the robbery.

Both Harris and Walker filed sworn motions for community supervision prior to trial. When arraigned on the charges, they pled guilty to aggravated robbery. A jury was empaneled to sentence them. Judge Davis, a visiting judge, presided, although the proceedings took place in Judge Poe's court.

## DISCUSSION & HOLDINGS

### I. CLOSING ARGUMENTS

In two issues for review, Harris complains that the trial court erred in

overruling objections to two arguments made by the prosecutor in his closing remarks.

■ Proper closing argument must fall within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's arguments; or (4) a plea for law enforcement. *Brandley v. State,* 691 S.W.2d 699, 712 (Tex.Crim.App.1985). Improper closing arguments include references to facts not in evidence or incorrect statements of law. *Burke v. State,* 652 S.W.2d 788, 790 (Tex.Crim.App.1983). An argument must be considered in light of the record as a whole, and, to constitute reversible error, the argument must be extreme or manifestly improper, violate a mandatory statute, or inject new facts, harmful to the accused, into the trial proceedings. *Brandley,* 691 S.W.2d at 712–13.

The first argument occurred as follows:

**THE STATE:** The defense attorneys want to make you think that probation is this awfully tough, mean thing. Do you honestly think that Judge Poe really wants these guys on probation?

**MS. BURTON**[1]: Your Honor, I'm going to object in that it's outside of the testimony.

**THE COURT:** Reasonable deduction. Will be overruled.

Though Judge Poe was not sitting in this proceeding, probation would be carried out by him. This argument conveyed to the jury Judge Poe's supposed preference for Harris's and Walker's punishment.

### A. Errors in the Jury Argument

■ The State argues that this rhetorical question was either made as a reason-

able deduction from the evidence, or in response to Harris's trial counsel's closing argument. Rhetorical questions are generally within the scope of jury argument, so long as they are based upon a reasonable deduction from the evidence. *Wolfe v. State,* 917 S.W.2d 270, 280 (Tex.Crim. App.1996). Both testimony from Harris at trial and some of his trial counsel's remarks in her closing argument discussed that Harris knew that while he wanted probation, probation is nevertheless a demanding form of punishment, especially in Judge Poe's court. Also in evidence was the fact that appellants both had been on probation before, but that it had not deterred them from committing this crime.

■ "[The State may] argue that juries should deter specific crimes by their verdict. The State may also argue the impact of the jury's verdict on the community. The State may not, however, argue that the community or any particular segment of the community expects or demands either a guilty verdict or a particular punishment." *Borjan v. State,* 787 S.W.2d 53, 55–56 (Tex.Crim.App.1990) (internal citations omitted). Reminding a jury of the impact of their verdict on a community differs from telling a jury that the community expects or demands a particular verdict or form of punishment. *Id.* The former is permissible, while the latter is not. *Id.* at 56. The reason that the law does not allow the latter is because it has long been recognized that the law of this State requires that the accused person will receive a fair trial. *Richardson v. State,* 158 Tex.Crim. 536, 257 S.W.2d 308 (1953). A fair trial is unavailable if it is not free from improper jury argument. *Cortez v. State,* 683 S.W.2d 419, 420 (Tex.Crim.App. 1984). An accused person is entitled to have his punishment determined without

---

**1.** Harris's counsel at trial.

reference to influences not in evidence. *Id.*

■ In this case, though the prosecutor did not tell the jury the community expectations or demands, a reference to Judge Poe's wishes and desires was a reference to influences not in evidence. *See id.* This is the very type of argument that undermines the fairness of a punishment hearing. When an accused elects to have a jury determine his punishment, the judge's wishes and desires for the accused's punishment are never proper as a plea for law enforcement. Whenever a prosecuting attorney tells a jury that the judge of the court, whether he is presiding or not, wants a particular punishment assessed, he is not only injecting a new and harmful fact into evidence which had no place there originally, but is also prosecuting his case in a manner not contemplated by our constitutional framers.

Judge Poe's desires for whether Harris was punished by probation or imprisonment were not in evidence. Therefore, this argument could not have been a reasonable deduction from the evidence.

This argument went too far to be within the scope of a response to defense counsel's argument. In closing argument, Harris's trial counsel stated,

> [Harris] knows that Judge Poe, whose court he would be on probation on, can give him boot camp.... So what you have in the charge are the basic everyday conditions that go with probation. That does not mean that the judge cannot assess additional term of probation ... this list is not an all-inclusive list of the things he'll have to do.... Also, ... if Mr. Harris messes up while he's on probation, doesn't meet one of his conditions, he has consequences. And those consequences also include going ... to the penitentiary.

Walker's attorney stated in closing argument, "[Walker] understands the seriousness of the offense. He understands what he's going to have to do if he gets probation. He does understand he's in Ted Poe's court."

These arguments may have very well opened the door to a response from the State. The State's response, however, should not exceed the scope invited. "The wall, attacked at one point, may not be fortified at another and distinct point." *Farris v. State,* 643 S.W.2d 694, 697 (Tex. Crim.App.1982). A proper response might be, "it does not matter how tough Judge Poe is, these defendants do not deserve the opportunities that probation provides." The argument that the State made, however, exceeded the scope of the invited response. The rhetorical question, "do you honestly think that Judge Poe really wants these guys on probation," was not an invited response. The wall was attacked at one point—Judge Poe will be tough if you decide to give the defendants probation—but the wall was fortified at another and distinct point—Judge Poe does not even want to give these defendants probation. This is improper jury argument. *Id.* We therefore hold that the trial court erred in overruling Harris's objection to the State's improper jury argument.

## B. Harm Analysis

■ We now must determine whether such error warrants reversal. TEX.R.APP. P. 44.2. The proper harm analysis depends on the kind of error involved. The Texas Court of Criminal Appeals has characterized erroneous rulings regarding improper comments during jury argument as encompassing non-constitutional, or "other error," within the purview of Rule 44.2(b). *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998); *Ortiz v. State,* 999 S.W.2d 600, 605–06 (Tex.App.—Hous-

ton [14th Dist.] 1999, no pet.). Rule 44.2(b) requires us to examine error in relation to the entire proceeding to determine whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Ortiz*, 999 S.W.2d at 606. In other words, "[a] criminal conviction should not be overturned for non-constitutional error if the appellate court, after reviewing the record as a whole, has assurance that the error did not influence the jury or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

In *Mosley*, the court relied on the following three factors to analyze the harm associated with improper jury argument and to determine whether reversal was required: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction (or, as here, punishment) absent the misconduct (the strength of the evidence supporting the conviction). *Mosley*, 983 S.W.2d at 259.

The *Mosley* court found that the first factor (severity of the misconduct) did not weigh very heavily in Mosley's favor because the inappropriate argument of the prosecutor did not inject new facts into the record; thus, the jury was in a position to evaluate the truthfulness of the prosecutor's assertion. *Id.* In contrast, the argument of the prosecutor in this case did inject new facts into the record. Further, the argument was calculated to negate Harris's chances of being put on probation by interjecting Judge Poe's alleged wishes and desires. It is very likely that the jury, upon hearing the improper comment and being unable to evaluate the truthfulness of the remark, attached great weight to its

having come from the prosecutor, and being approved by the visiting judge, who both could be seen as having some special knowledge of Judge Poe's thoughts on the matter.

Turning to the second factor (measures adopted to cure the misconduct), we note that the trial court not only overruled Harris's objection, but also incorrectly stated that this argument was a reasonable deduction from the evidence. In short, the court adopted no measures to cure the misconduct and, in fact, seemed to agree with the argument.

■ Next, we look at the certainty of Harris's punishment absent the misconduct. As noted above, after appellants pled guilty, the only issue in this case was whether Harris and Walker would be punished by probation or by imprisonment. Under Texas law, when a judge rules upon the admissibility of evidence he, "shall not discuss or comment upon the weight of the same or its bearing in the case ... nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." Tex.Code Crim. Proc. Ann. art. 38.05 (Vernon 1979). Rather, a trial judge should diligently avoid making any remark that is calculated to convey to a jury his opinion of the case or any fact issue raised by the evidence. *Bachus v. State*, 803 S.W.2d 402, 405 (Tex. App.—Dallas 1991, pet. ref'd). Furthermore, in carrying out its duties in ruling upon a defendant's objection, the trial court must avoid including in its ruling any unfounded comments. *Id.* Clearly, if Judge Poe had made these remarks, those would have been calculated to convey to the jury his opinion of the case. By the sitting judge overruling an objection to this improper jury argument, the trial court put " 'the stamp of judicial approval' on the improper argument, thus magnify-

ing the harm." *Good v. State*, 723 S.W.2d 734, 738 (Tex.Crim.App.1986). This judicial ratification of an improper jury argument clearly could have been calculated to prejudice the defendant's rights. The State, arguably, urged the jury to make an inference that the person who would preside over Harris's probation, Judge Poe, would not even want Harris on probation. Ultimately, this jury opted not to impose probation. Absent this misconduct, it is uncertain whether the jury would have imposed imprisonment. In addition to testimony about this crime and Harris's prior probation, the jury heard testimony about Harris's remorse for his actions and his desire to accept responsibility for them, as well as testimony from his aunt that she felt the family was behind Harris, whom she described as a "good kid." We have no assurance that the error did not influence the jury or had but a slight effect. *See Johnson*, 967 S.W.2d at 417.

■ In addition to the *Mosley* factors, the emphasis placed on the improper comment and the cumulative effect of multiple errors are appropriate considerations in determining the injurious effect of the argument. *Reed v. State*, 991 S.W.2d 354, 364 (Tex.App.—Corpus Christi 1999, pet. ref'd) (citing *King v. State*, 953 S.W.2d 266, 271–73 (Tex.Crim.App.1997); *Stahl v. State*, 749 S.W.2d 826 (Tex.Crim.App. 1988)). It is difficult to imagine a situation where more emphasis could have been placed on this improper jury argument, than the one we are faced with here. The comments of the prosecutor and the judge, taken together, conveyed to the jury that, in this court, probation should not be considered for these defendants.

After reviewing the record as a whole, we find that the improper argument substantially interfered with Harris's right not to have the judge impose his opinion of the case on the jury. Accordingly, we find the error harmed Harris. We reverse Harris's punishment and remand to the trial court for punishment proceedings in accordance with this opinion.

Since we have reversed and remanded Harris's sentence on his first issue for review, we will not discuss his second issue for review.

## II. ATTORNEY CLIENT PRIVILEGE

■ In two points of error, Walker complains that the trial court erred in overruling objections to questions by the State that Walker claims invaded the province of the attorney-client relationship. The following exchange occurred during the State's cross-examination of Walker:

> THE STATE: It wouldn't be wise for you to plead not guilty in a case like this with overwhelming evidence.
>
> MS. CAMERON[2]: I'm going to object, Your Honor. He's not a lawyer. It calls for speculation.
>
> THE COURT: He may state it.
>
> MS. CAMERON: Also invades the attorney-client privilege.
>
> THE COURT: That will be overruled.
>
> THE STATE: It wouldn't be wise to plead not guilty in a case like this with overwhelming evidence, would it?
>
> WALKER: No, sir.

During the State's re-cross examination of Walker, the following exchange took place:

> THE STATE: You said that you were in Judge Ted Poe's court?
>
> WALKER: Yes, sir.
>
> THE STATE: And that he's going to be real strict with you, right?
>
> WALKER: Yes, sir.

---

2. Walker's counsel at trial.

**THE STATE:** But Judge Ted Poe doesn't want you to be one of his probationers, does he?

**MS. CAMERON:** I'm going to object. Calls for speculation.

**THE STATE:** In response to his probation, Judge.

**THE COURT:** Be sustained.

**THE STATE:** If you could have pled guilty to Judge Poe, would you have done that?

**MS. CAMERON:** I'm going to object, your Honor, calls for speculation and invades the attorney client privilege.

**THE COURT:** That will be overruled.

**WALKER:** Yes, sir.

Walker argues that the State, through this line of questioning, attempted to insinuate that Walker pled guilty to the jury, rather than to Judge Poe, because Walker's attorney had advised him that Judge Poe did not want him on probation. Walker further argues that this line of questioning infringed on Walker's attorney-client privilege, in that these questions asked him to disclose his lawyer's advice on the best way to handle the case.

### A. Errors in Overruling Objections to Questions

### That Invaded the Attorney–Client Privilege

■ The attorney-client privilege allows unrestrained communications and contact between an attorney and client in all matters in which an attorney's professional advice or service is sought, without fear that these confidential communications will be disclosed. *In re Valero Energy Corp.*, 973 S.W.2d 453, 457 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Under the attorney-client privilege, the statements and advice the attorney gives to the client are just as protected as the communications the client makes to the attorney.

*Austin v. State*, 934 S.W.2d 672, 673 (Tex. Crim.App.1996).

■ One result of the attorney-client privilege is that it excludes evidence, and arguably "impedes [the] full and free discovery of the truth. . . ." *Strong v. State*, 773 S.W.2d 543, 547 (Tex.Crim.App.1989). But, the attorney-client privilege is an exclusionary rule of evidence, not a principle of constitutional proportions; therefore, it should be narrowly construed. *Id.* at 547–48.

The issue before us is whether the trial court erred in overruling Walker's objection to the above questions. In his testimony during the punishment phase of trial, Walker averred that he held remorse for the wrong he had done, that he pled guilty because he wanted to take responsibility for what he did, and that he deserved probation because of his potential for reform.

The alleged error occurred on cross and re-cross. On cross-examination, the State asked whether it would be wise to plead not guilty in a case with such overwhelming evidence. An objection to this question, based on the attorney-client privilege was overruled. On re-cross examination, the judge sustained an objection to the question, "[b]ut Judge Ted Poe doesn't want you to be one of his probationers, does he?" However, the judge overruled counsel's attorney-client privilege objection when the State asked Walker if he would have pled guilty to Judge Poe.

Walker argues that, by this combination of questions, the State attempted to convey to the jury that if Judge Poe were the trial judge, Walker would not have pled guilty to him because Walker knows that Judge Poe would not give him probation. In order to confirm this, the State would have necessarily probed into what advice

Walker's lawyer had given him regarding the best way to handle this case.

■ Questions that pertain to a lawyer's advice to his client are improper because they invade the attorney-client privilege. *Austin*, 934 S.W.2d at 673. In *Neugebauer v. State*, the Amarillo Court of Appeals dealt with a similar issue. 974 S.W.2d 374 (Tex.App.—Amarillo 1998, pet. ref'd). There, the State asked the defendant, who also testified at the punishment phase, "[p]rior to this trial, your attorneys had—when they were getting ready for trial, they told you you were probably going to get probation from this jury, didn't they?" *Id.* at 375. The court held that this question clearly attempted to address a privileged communication between attorney and client. *Id.* at 376.

■ If the evidence as to whether the testimony was privileged was conflicting, the judgment of the trial court is conclusive. *Maldonado v. State*, 425 S.W.2d 646, 648 (Tex.Crim.App.1968). The evidence in this case is not conflicting, although the fact scenario that we are presented with is more of a close call than the one in *Neugebauer*. 974 S.W.2d at 375. However, in spite of the fact that, here, the prosecutor did not directly ask Walker what his attorney had told him, the questions inquired into an area that would involve privileged communications between Walker and his attorney. In order for Walker to have developed an opinion about the best plea to make in this case in Judge Poe's court, he must have had some input from his attorney. The court therefore erred in overruling Walker's objections to these questions.

## B. Harm Analysis

■ We now must determine whether this error warrants reversal. TEX.R.APP. P. 44.2. While the attorney-client privilege may bear some relationship to several constitutional rights, the privilege itself is not a principle of constitutional proportions. *Strong v.. State*, 773 S.W.2d 543, 547 (Tex.Crim.App.1989). Rather, it is an exclusionary rule of evidence. *Henderson v. State*, 962 S.W.2d 544, 553 (Tex.Crim. App.1997); *Strong*, 773 S.W.2d at 547. Accordingly, we must apply Rule 44.2(b). Rule 44.2(b) requires us to examine error in relation to the entire proceeding to determine whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Ortiz*, 999 S.W.2d at 606.

The first question objected to went to whether it would be wise to plead not-guilty with all the "overwhelming" evidence against Walker. After the court overruled the objection to this question, Walker answered that it would not be wise to plead guilty to a case like this, with overwhelming evidence. However, this answer could not have contributed to Walker's punishment. Walker had already pled guilty to the crime of aggravated robbery and admitted that all of the evidence against him was true. Whether it would be prudent to plead not guilty, in light of the evidence which Walker admits is true, would have been a moot point. We find that the court's error as to allowing this question did not affect Walker's substantial rights, and therefore must be disregarded. TEX.R.APP. P. 44.2(b).

■ The second set of questions also invaded the attorney-client privilege. In reply to the question of whether Walker would have pled guilty to Judge Poe, Walker replied that he would. In no way did this confirm the State's attempt to convey to the jury that Judge Poe would not want to give Walker probation. We consequently hold that the trial court's error in overruling the objection to this

question based on the attorney-client privilege did not affect Walker's substantial rights. Therefore, the error must be disregarded. *Id.* Accordingly, we affirm Walker's punishment.

## CONCLUSION

We find that the trial court erred in overruling objections by Harris to the State's remarks during closing argument. This error caused harm to Harris. We reverse Harris's punishment and remand the punishment phase of Harris's conviction to the trial court for further proceedings in accordance with this opinion.

Likewise, we find that the court erred in overruling objections to questions made by the State that intruded into Walker's attorney-client privilege. We hold, however, that such error was harmless and affirm Walker's punishment.

EDELMAN, J., concurring and dissenting.

EDELMAN, Justice, concurring and dissenting.

I differ with the majority opinion in two respects. First, with regard to Harris's first issue for review, I do not agree that the record leaves uncertainty as to whether, absent the improper argument, the jury would have imposed imprisonment rather than probation. The jury charge instructed that the jury could recommend probation only if, among other things, it assessed punishment not to exceed ten years confinement.[1] By imposing fifteen years confinement for both appellants, the jury unequivocally indicated that probation was not a possibility for either. Therefore, I would affirm Harris's punishment and

dissent from the majority opinion to that extent.

Secondly, with regard to Walker's points of error, I do not agree that the State's questions to Walker (a) whether it would have been wise to plead not guilty and (b) whether he would have pled guilty to Judge Poe, invaded the attorney-client privilege. Walker argues, and the majority opinion apparently concludes, that the attorney-client privilege was violated because "In order to confirm [that Walker knew Judge Poe would not have given him probation], the State would have necessarily probed into what advice Walker's lawyer had given him regarding the best way to handle the case."

On the contrary, these questions did not ask what Walker had been advised by his lawyer, but only for his own state of mind, if any, on those subjects. The majority's position necessarily assumes that Walker had no prior experience with, or other understanding about, pleading guilty or Judge Poe on which to base his own opinion, but Walker's trial counsel did not seek to voir dire him to establish any such foundation for an objection. Accordingly, each question could have been answered according to its stated scope without involving any attorney-client communications, if indeed there even were any on this subject, which the record does not reflect. Therefore, I concur in the majority's overruling of Walker's points of error for lack of error rather than for lack of harm.

---

1. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3(e)(1) (Vernon Supp.2001) (a defendant who is sentenced to a term of imprisonment exceeding ten years is not eligible for community supervision).