6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00152-CV


______________________________





IN RE


LEARJET INC.






 
 

Original Mandamus Proceeding







 
 



Before Grant, Ross, and Bass, JJ.

Bill Bass, Justice, Retired, Sitting by Assignment




O P I N I O N


 Learjet Inc. has filed a petition seeking a writ of mandamus. Learjet asks this Court
to direct the district judge to vacate his order granting a motion to compel discovery and
to direct the judge to enter an order requiring Raytheon E-Systems, the real party in
interest, to return four videotapes obtained through discovery.

 Learjet is a defendant in a lawsuit brought by Raytheon. Raytheon sued Learjet and
Bombardier Inc. (a Canadian Corporation-and apparently the owner of Learjet) claiming
that aircraft delivered by Learjet did not meet contract specifications as to cabin
temperature control. Raytheon had obtained a contract with the Federal Aviation
Administration (FAA) to provide aircraft for the FAA to use in testing, maintaining, and
certifying navigation and communication facilities. There were specific requirements as to
cabin temperature control. Raytheon alleged that the aircraft as built could not comply with
the requirements, that Bombardier refused to fix the problems, and that Raytheon then
spent a substantial amount of money bringing the aircraft into compliance.

 Learjet videotaped witness statements of its employees Wayne Stout, Mike Greeno,
and Richard Wasson. These were played for the parties during mediation proceedings. 
The mediation failed. Raytheon asked the trial court to order production of the edited
videotapes it had seen and to also order production of the unedited core videotapes. At
the hearing, Learjet took the position that the videotapes were created for mediation and
were not discoverable. The court ordered production.

 In a motion to reconsider, Learjet argued the videotapes were not discoverable
because they were protected by the attorney-client privilege due to the fact that they were
prepared to "facilitate the rendition of legal services, specifically for use as materials in
mediation." Learjet argued the videotapes contained comments of counsel and of a
consultant (1) regarding trial strategy and legal analysis, as well as discussions about the
facts of the case. 

 Mandamus issues only when the mandamus record establishes (1) a clear abuse
of discretion or the violation of a duty imposed by law, and (2) the absence of a clear and
adequate remedy at law. Cantu v. Longoria, 878 S.W.2d 131, 132 (Tex. 1994); Walker v.
Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). Mandamus is an extraordinary remedy that
will issue only to correct a clear abuse of discretion or, in the absence of another statutory
remedy, when the trial court fails to observe a mandatory statutory provision conferring a
right or forbidding a particular action. Abor v. Black, 695 S.W.2d 564, 567 (Tex. 1985). 
An appeal is inadequate when the trial court acts with such disregard for guiding principles
of law that the relator's harm becomes irreparable, such as the permanent loss of
substantial rights. See Nat'l Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 771 (Tex.
1995); see also Deloitte & Touche, L.L.P. v. Fourteenth Court of Appeals, 951 S.W.2d 394,
398 (Tex. 1997).

 Thus, a party will not have an adequate remedy by appeal when the appellate court
would not be able to cure the trial court's discovery error. This occurs when the trial court
erroneously orders the disclosure of privileged information which will materially affect the
rights of the aggrieved party, such as documents covered by the attorney-client privilege,
West v. Solito, 563 S.W.2d 240 (Tex. 1978), or trade secrets without adequate protections
to maintain the confidentiality of the information. Automatic Drilling Machs., Inc. v. Miller,
515 S.W.2d 256 (Tex. 1974).

 It is clear the videotapes were prepared for mediation. That does not, however,
necessarily protect them from discovery. Learjet relies on language in the Alternate
Methods of Dispute Resolution Act that, "a communication relating to the subject matter
of any civil . . . dispute made by a participant in an alternative dispute resolution
procedure . . . is confidential, is not subject to disclosure, and may not be used as evidence
against the participant . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 154.073(a) (Vernon
Supp. 2001). However, the statute also provides that materials used in mediation are
discoverable if they are discoverable independent of the procedure. Tex. Civ. Prac. &
Rem. Code Ann. § 154.073(c) (Vernon Supp. 2001) reads as follows: "An oral
communication or written material used in or made a part of an alternative dispute
resolution procedure is admissible or discoverable if it is admissible or discoverable
independent of the procedure."

 The relevant question is whether the videotapes are discoverable or are protected
from discovery by the attorney-client privilege. The attorney-client privilege allows
unrestrained communications and contact between an attorney and client in all matters in
which an attorney's professional advice or service is sought, without fear that these
confidential communications will be disclosed. In re Valero Energy Corp., 973 S.W.2d 453,
457 (Tex. App.-Houston [14th Dist.] 1998, orig. proceeding). Tex. R. Evid. 503 expressly
states that certain attorney-client communications are "confidential" and permits a client
to refuse to disclose "confidential" communications under specifically delineated
circumstances:

 (a)(5) A communication is "confidential" if not intended to be
disclosed to third persons other than those to whom disclosure is made in
furtherance of the rendition of professional legal services to the client or
those reasonably necessary for the transmission of the communication. 


 (b) Rules of Privilege.


 (1) General Rule of Privilege. A client has a privilege to refuse to
disclose . . . confidential communications made for the purpose of facilitating
the rendition of professional legal services to the client:


 (A) between the client or a representative of the
client and the client's lawyer or a representative of the lawyer;


 (B) between the lawyer and the lawyer's
representative;


 (C) by the client or a representative of the client, or
the client's lawyer or a representative of the lawyer, to a lawyer
or a representative of a lawyer representing another party in a
pending action and concerning a matter of common interest
therein;

 

 (D) between representatives of the client or between
the client and a representative of the client; . . . .

Tex. R. Evid. 503(a)(5), (b)(1); see In re Georgetown, 44 Tex. Sup. Ct. J. 434, 2001 WL
123933 (Feb. 15, 2001).

 We have reviewed the videotapes submitted to this Court. Learjet does not direct
this Court to any particular portion of the videotapes it claims are protected by the attorney-client privilege. Rather, Learjet takes the position that the videotapes are privileged in their
entirety. The videotapes consist of questions by Learjet's attorney to current and former
employees about the actions taken in designing and building the aircraft and the cooling
system, and about the conditions in which the aircraft were hangared by Raytheon. 

 In this case, the videotapes were not made to facilitate the rendition of legal
services, but were instead made for the express purpose of presentation of factual
information to the opposing parties at a mediation proceeding. The videotapes consist of
questions by Learjet's attorney to the employees about the procedures followed in building
the aircraft, meeting the specification requirements, an explanation of the construction of
the cooling system, and their impressions regarding the way the aircraft were cared for
after delivery. In addition, at one point counsel stopped the taping for discussions off the
record. The petitioner has not directed us to, nor have we found, anything in these
transcriptions relating to trial strategy, legal analysis, or that would implicate the attorney-client privilege. 

 Raytheon contends Learjet did not timely assert the attorney-client privilege. The
attorney-client privilege must be timely asserted to be applied. Tex. R. Civ. P. 193.3 allows
the party to withhold privileged material, but then requires the party to tell the other side
that he has withheld material, tell them what request is involved, and set out the privilege
asserted. Learjet did not follow this rule at the hearing on Raytheon's motion to compel,
did not explain its failure, and did not assert the privilege until it filed a motion for
reconsideration. However, we consider it critical to this portion of our analysis to recognize
that the objection was made before the videotapes were delivered to Raytheon. The rule
does not specify the exact point at which an objection should be made, but we conclude
that under these facts the objection was made at a time the trial court could have provided
relief.

 Finally, we recognize that the Rules of Civil Procedure delineate a category for
testifying experts. Tex. R. Civ. P. 192.3(e). The rules expressly provide that a party is
required to disclose the expert's mental impressions and opinions in connection with the
case and any methods used to derive them, the facts known by the expert that relate to or
form the basis for his or her opinions, and all documents, reports, or tangible items
prepared by the expert in anticipation of his or her testimony. The witnesses involved in
this dispute are designated as testifying expert witnesses, and the material involved is the
type of information that is discoverable under the rule. 

 Accordingly, we conclude that the videotapes constitute discoverable material, that
the mediation activities did not provide a blanket protection for all such material, and that
this particular material is not protected by that privilege.

 We find the trial court did not abuse its discretion by ordering the videotapes
produced.

 The petition for writ of mandamus is denied.


 Donald R. Ross

 Justice


Date Submitted: November 15, 2001

Date Decided: November 15, 2001


Publish

1. This person was not identified as a testifying expert, but she described herself as
a "consultant." As a consultant, her mental impressions and opinions would not be
discoverable, but we have not been directed to, nor have we found, any such impressions
or opinions in the videotapes. See Tex. R. Civ. P. 192.3(e).


m
jail in Arkansas was blameworthy in some respect.

 True, the revocation hearing was held five years and eight months after the motion to revoke
was filed. During all but approximately one month of that delay, however, Wade was free or was
confined for other charges unrelated to the current matters. Even if the State was blameworthy in
failing to apprehend Wade when he was released from prison in Arkansas in mid 1996,
approximately five years and three months of the additional delay was due in large part to the fact
that Wade had failed in his duty to report his location to the authorities in Gregg County. 

 In addition, Wade not only failed to assert the speedy trial right until now, but also "laid low"
during most of the delay, ignoring his duties under his community supervision. Finally, the record
from the revocation hearing does not show any prejudice to Wade by the length of time between the
filing of the motion to revoke and the revocation hearing (a deficiency directly related to his failure
to object in the trial court). In fact, there is some indication Wade did not turn himself in or request
a revocation hearing precisely because he did not want to return to jail. Wade apparently preferred
the status quo. From the record developed at the revocation hearing we detect no violation of Wade's
right to a speedy trial.

Sufficiency of Evidence


 Wade next contends the evidence is legally and factually insufficient to support the
revocation of his community supervision. The decision whether to continue or revoke community
supervision is within the trial court's discretion. Wester v. State, 542 S.W.2d 403, 405 (Tex. Crim.
App. 1976); Allen v. State, 946 S.W.2d 115, 116 (Tex. App.Texarkana 1997, no pet.). We review
the trial court's ruling for abuse of discretion. See Jackson v. State, 645 S.W.2d 303, 305 (Tex. Crim.
App. 1983); Lopez v. State, 46 S.W.3d 476, 481 (Tex. App.-Fort Worth 2001, pet. ref'd).

 The trial court cannot revoke community supervision without a showing the defendant
violated a condition of his or her supervision. DeGay v. State, 741 S.W.2d 445, 449 (Tex. Crim.
App. 1987); Allen, 946 S.W.2d at 116. When there is sufficient evidence to support a finding the
defendant violated a condition of his or her supervision, the trial court does not abuse its discretion
by revoking community supervision. See Cardona v. State, 665 S.W.2d 492, 493-94 (Tex. Crim.
App. 1984); Stevens v. State, 900 S.W.2d 348, 351 (Tex. App.-Texarkana 1995, pet. ref'd). Proof
of a single violation is sufficient to support revocation of community supervision. O'Neal v. State,
623 S.W.2d 660, 661 (Tex. Crim. App. 1981); Myers v. State, 780 S.W.2d 441, 445 (Tex.
App.Texarkana 1989, pet. ref'd).

 In the present case, the evidence showed Wade failed to notify his supervision officer that
he was being extradited to Arkansas from Tennessee in 1996, that he was in jail in Arkansas in 1996,
or that he was living in Arkansas after 1996. Further, Wade admitted he did not pay his supervision
fees, fines, court costs, or court-appointed attorney costs, even after he was released from jail in
Arkansas in 1996. In fact, when asked whether there was any reason he could not pay these fees
between 1996 and 1999, Wade testified, "No, sir. I should have been paying." Proof of these
violations is sufficient to support the trial court's decision to revoke Wade's community supervision.

 The judgment is affirmed. 

 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 5, 2002

Date Decided: July 11, 2002


Publish