NO. 07-08-0081-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 12, 2009

_____


CORBETT K. WEINN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-416,147; HON. CECIL G. PURYEAR, PRESIDING

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Corbett K. Weinn, entered a plea of *nolo contendere* to possession with intent to deliver a controlled substance, methamphetamine, of less than 400 grams but at least 200 grams, and appellant entered a plea of guilty to manufacturing a controlled substance, methamphetamine, of less than 400 grams but at least 200 grams. A jury subsequently assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of 30 years on each offense. The trial court

ordered that the sentences be served concurrently. Appellant appeals claiming that he was denied effective assistance of counsel and that convictions for both offenses subjected him to double jeopardy. We will vacate the judgment for the offense of manufacture of methamphetamine and affirm the balance of the trial court's judgment.

## Factual and Procedural Background

On April 6, 2007, deputies from the Lubbock County Sheriff's Office responded to a citizen complaint about a strange smell coming from an area adjacent to the caller's residence. Upon arriving at the scene, deputies could smell what they determined to be anhydrous ammonia coming from the area of a shed behind appellant's residence. Upon arriving on the scene and contemporaneously with investigating the smell coming from the shed, appellant was observed going from the shed to a pickup truck, later identified as belonging to appellant. The deputies detained appellant at this time and continued to investigate the source of the odor of ammonia. Following the detention of appellant, deputies searched his person and found a glass pipe, that was described as being of the type used in the consumption of narcotics, and several baggies, at least one of which later tested positive for methamphetamine. One of the deputies entered the shed to determine if there were any other individuals inside and immediately noticed that the smell of anhydrous ammonia was extremely strong. One deputy testified that the smell was so strong that he immediately backed out of the shed. Another deputy testified that he searched appellant's pickup truck for officer's safety. The truck was located adjacent to the shed and the search produced empty blister packs of Sudafed, empty cans of starter fluid, and a plastic "jug" which contained a liquid thought to be methamphetamine.

2

Appellant later gave permission for the officers to search his house and the shed. The search of the house and shed revealed items typically used in the manufacture and distribution of methamphetamine. The items seized were transported to the Department of Public Safety (DPS) laboratory in Lubbock, Texas, for testing and examination.

Appellant was subsequently indicted in a three count indictment alleging possession with intent to manufacture methamphetamine (Count I), possession with intent to distribute methamphetamine (Count II), and manufacture of methamphetamine (Count III). Each count alleged an aggregate weight of less than 400 grams but at least 200 grams, thereby making each offense a first degree felony. Prior to jury selection, the State abandoned Count I of the indictment. Appellant's counsel interposed an objection to proceeding on both of the remaining counts of the indictment, contending that proceeding on the remaining counts would violate appellant's rights against double jeopardy. The trial court overruled appellant's objection. Appellant advised the trial court that he intended to enter pleas of *nolo contendere* to Count II of the indictment and guilty to Count III of the indictment. A jury was subsequently selected to determine punishment.

During the hearing on punishment, Scott Williams, a forensic scientist with the DPS, testified that the plastic jug with the liquid in it, that had been recovered from the pick-up truck, contained two distinct layers. Williams testified that he tested the clear liquid layer and found it to be methamphetamine weighing 224.96 grams. The bottom layer was described as a by-product of the methamphetamine extraction process. Williams stated that he did not test the bottom layer. During Williams's cross-examination, appellant's counsel presented a report from an independent laboratory stating that the top layer was

3

only 7 percent methamphetamine. The report further revealed that the bottom layer also contained methamphetamine. During the State's re-direct examination, Williams testified that the bottom layer had a total weight of 200 grams.

Appellant introduced evidence through family members that he suffered from attention deficit hyperactivity disorder (ADHD). Appellant's theory of the case was that he was manufacturing the methamphetamine for his own use as self-medication for his ADHD. Appellant's sister testified that appellant had admitted that he started using speed to overcome his ADHD while in college. The State cross-examined appellant's sister regarding a letter she had written to appellant offering advice about steps he should take to make himself more presentable to a jury and the court. Appellant's mother testified regarding things she observed during appellant's youth that may indicate that he suffered from ADHD while he was growing up. Finally, appellant presented the testimony of C. J. Schoenrock, Ph.D. in human development, who testified about her experience in diagnosing ADHD in patients and the effects of self-medication as opposed to prescribed medication.

After both sides had closed, the jury was charged and both sides argued their respective positions. The jury returned a sentence of 30 years on each count. The trial court ordered that the sentences be served concurrently. This appeal followed.

We will address appellant's claims of ineffective assistance of counsel first. Appellant alleges that he was denied effective assistance of counsel in four particulars: the failure of counsel to object to certain evidence used in plea negotiations, the failure of

4

counsel to preserve error as to certain privileged material before the jury, the failure of counsel to object to improper jury argument, and the failure of counsel to preserve error as to prosecutorial misconduct.

Effective Assistance of Counsel

In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts adhere to the two-pronged test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). Judicial review of an ineffective assistance of counsel claim must be highly deferential to trial counsel and avoid using hindsight to evaluate counsel's actions. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 690. The burden is on appellant to prove by a preponderance of the evidence that counsel was ineffective. See McFarland v. State, 928 S.W.2d 482, 500 (Tex.Crim.App. 1996) (en banc). To meet this burden, an appellant must first prove that counsel's performance was deficient, *i.e.*, that counsel's assistance fell below an objective standard of reasonableness. Id. If the appellant has demonstrated deficient assistance of counsel, it is then necessary that the appellant affirmatively prove that he was prejudiced by the deficient assistance. Id. In proving prejudice, appellant must prove a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.; Hernandez, 726 S.W.2d at 55. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Hernandez, 726 S.W.2d at 55.

Any allegation of ineffective assistance of counsel must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. McFarland, 928 S.W.2d at 500. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id. Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Ex parte Menchaca, 854 S.W.2d 128, 131 (Tex.Crim.App. 1993). Appellate courts look to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. Ex parte Felton, 815 S.W.2d 733, 735 (Tex.Crim.App. 1991).[1] It is possible that a single egregious error of omission or commission by appellant's counsel can constitute ineffective assistance. Id.

In the case before the court, appellant has alleged that trial counsel was ineffective in four particular areas. We will address each in turn.

Document used in plea negotiations

By his first contention, appellant posits that trial counsel was ineffective by failing to object to the State's cross-examination of appellant's sister, Linda Grant, with a letter that Grant had written to appellant. Appellant's argument is grounded on the fact that the letter was produced by trial counsel for the State's consideration during plea bargain

---

[1] While the right to effective assistance to counsel during punishment is reviewed under the lesser standard of "reasonably effective assistance," see id., even when assessed against the heightened standard of Strickland, we conclude that appellant was effectively assisted by counsel. But see id. at 736 n.4 (questioning the departure from the Strickland standard in cases alleging ineffective assistance of counsel during punishment).

negotiations.  As such, according to appellant's theory, rule 410(4) of the Texas Rules of Evidence prohibits the use of such evidence against the appellant.[2]  In support of this proposition, appellant cites the court to Neugebauer v. State, 974 S.W.2d 374, 376-77 (Tex.App.–Amarillo 1998, pet. ref'd).  However, Neugebauer only tangentially involved rule 410(4), inasmuch as the central issue was not statements made during plea bargain negotiations, but rather whether the communication in question was privileged as attorney-client communication.  See Id. at 377.  Further, rule 410, by its own terms, does not apply to a situation where the defendant enters a plea of guilty or *nolo contendere* and there is no subsequent effort to withdraw the plea.  Rule 410(4)[3]; May v. State, No. 07-04-0228-CR, 2005 Tex.App. LEXIS 1885, at *7-*9 (Tex.App.–Amarillo March 10, 2005, pet. ref'd) (not designated for publication).  In appellant's instance, he entered a plea of *nolo contendere* to Count II and guilty to Count III, therefore, rule 410(4) does not apply.  Accordingly, counsel could not have been ineffective for failing to object to the State's use of the letter for purposes of cross-examination, as the objection would have been correctly overruled. Inasmuch as the trial court would have been correct in overruling any objection under rule

---

[2] Further reference to the Texas Rules of Evidence will be by reference to "rule ___."

[3] Rule 410 Inadmissibility of Pleas, Plea Discussions and Related Statements

Except as otherwise provided in this rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority, . . . , or in a criminal case, that do not result in a plea of guilty or a plea of *nolo contendere* or that results in a plea, later withdrawn, of guilty or *nolo contendere*.

410(4), the failure of appellant's trial counsel to object could not be indicative of deficient performance of counsel.  See McFarland, 928 S.W.2d at 500.

Failure to preserve error as to a violation of attorney-client privilege

Appellant next contends that his trial counsel was ineffective when C. J. Schoenrock, Ph.D., was called as an expert witness to testify about the effects of appellant's ADHD and the likelihood that appellant was more vulnerable to addiction to methamphetamine.  According to appellant, trial counsel failed in his duty to object to the State's questioning Schoenrock about testing she administered to appellant and notes she had taken during her interview of appellant.  Under the theory proposed by appellant, this information was a privileged communication that was meant only for trial counsel and the State had no right to explore the same.  Accordingly, appellant contends that trial counsel was derelict in his duty by failing to object quickly enough and, further, for failing to continue to object or obtain a running objection to that line of questions.  Appellant's contention turns on whether the information was, in fact, a privileged communication under the rules that would shield the witness from having to divulge the substance of the communication.  See Rule 503.[4]

---

[4] Rule 503 Lawyer-Client Privilege

(a) Definitions.  As used in this rule:
(1) A "client" is a person . . . who is rendered professional legal services by a lawyer . . . .
(4) A "representative of the lawyer" is:
　　(A) one employed by the lawyer to assist the lawyer in the rendition of professional legal services . . . .
(5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the

8

In determining an answer to this question, the interplay of the rules in regard to expert testimony must be considered. See Rule 705(a).[5] The record reflects that Shoenrock was testifying as an expert witness for the defense. Once she offered her expert opinion, the State was entitled to examine her about the factual underpinning of that opinion. See Wheeler v. State, 67 S.W.3d 879, 883 (Tex.Crim.App. 2002). Since the State was allowed to ask about the facts and data upon which the expert's opinion was based, the trial court would have been correct in overruling any objection to this line of questioning. Therefore, the failure of trial counsel to preserve error in this respect could not be indicative of ineffective assistance of counsel. See McFarland, 928 S.W.2d at 500.

Failure to Object to Prejudicial Jury Argument

Appellant's third allegation of ineffective assistance of counsel complains that the State, during final arguments, engaged in prejudicial argument that counsel failed to object to. When reviewing allegations of improper argument, we analyze the argument to see if it falls into one of the four areas of proper jury argument. See Lagrone v. State, 942 S.W.2d 602, 619 (Tex.Crim.App.1997). Those areas are: (1) summation of evidence presented at trial; (2) reasonable deductions drawn from evidence presented at trial; (3)

---

rendition of professional legal services to the client . . . .

[5] Rule 705 Disclosure of Facts or Data Underlying Expert Opinion

(a) Disclosure of Facts or Data. The expert may testify in terms of opinion or inference and give the expert's reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data.

answers to opposing counsel's argument; or (4) plea for law enforcement. Id. To determine whether jury argument properly falls within one of these categories, we must consider the argument in light of the record as a whole. Wilson v. State, 938 S.W.2d 57, 61 (Tex.Crim.App. 1996). To constitute reversible error, the argument must be extreme or manifestly improper, violative of a mandatory statute, or have injected new facts, harmful to the accused, into the trial proceedings. Id at 59. The argument must be considered within the context in which it appears. Gaddis v. State, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988).

Appellant complains of two separate arguments that the State made. In the first, the State, argued the following:

> He's been charged with over 200 grams. But the Defense's own lab comes back, he's got meth over 400 grams, with adulterants and dilutants.

Later, during closing, the State revisits this area and again tells the jury that, in fact, appellant had over 400 grams of methamphetamine and as such would not be eligible for probation, but would be facing incarceration for 15 years to life. According to appellant, this argument did not fall within the parameters of permissive argument. However, such assertion by appellant is incorrect. The record clearly demonstrates that the forensic chemist for the State testified that he tested only the liquid portion of the contents of the plastic jug. This resulted in a weight of 224.96 grams of methamphetamine, including adulterants and dilutants. However, during cross-examination of the State's forensic chemist, appellant's counsel was allowed to examine the witness about the results from

10

tests conducted by an independent lab for appellant. Subsequently, during re-direct examination, the State elicited the following testimony:

> Q. Okay. So you tested the top layer, which contained methamphetamine, and it came back with 229 point something grams; correct?
>
> A. That is correct.
>
> Q. And you– like you said earlier, you typically don't test the bottom layer because it's considered trash?
>
> A. We consider it trash in the sense that the top layer is going to be where the methamphetamine is headed or going to. So we typically do not analyze the bottom layer. . . .
>
> Q. Defendant's Exhibit 1, the lab report that corresponds with State's Exhibit 28, which would be the bottom layer of that substance, contained meth, did it not?
>
> A. Yes, it does.
>
> Q. Another 200 grams of substance that contains meth; correct?
>
> A. Yes, it would.
>
> Q. A controlled substance in the State of Texas, 200 grams?
>
> A. That is correct.
>
> Q. So, actually, what was in here was over 400 grams?
>
> A. If you counted the top and bottom layer, yes.

The record includes evidence upon which the State could have charged appellant with manufacturing or possession of up to 400 grams of methamphetamine. Therefore, the argument of the State that appellant complains of is both a summation of the record and a reasonable deduction from the record. Hence, the argument was not objectionable. See Lagrone, 942 S.W.2d at 619. As the argument was not objectionable, the failure of

11

counsel to object was not ineffective assistance of counsel.  See McFarland, 928 S.W.2d at 500.

Next, appellant complains about the following argument made by the State during closing arguments:

What do you want to do with someone who manufactures that stuff and intends to distribute it to the people who we work with, to the kids who go to school here?  That's what you have to ask yourself.  It's as simple as that. Thank you.

Appellant contends that the above argument was nothing more than an attempt to prejudice the jury by arguing that appellant was selling methamphetamine to children. Further, appellant contends that the argument was timed so as to be the last words heard by the jury before they began deliberations.

When considering allegations of improper jury argument, the appellate court must examine the context of the complained-of argument.  Gaddis, 753 S.W.2d at 398.  A review of the record before us demonstrates that appellant's theory throughout the trial was that the methamphetamine he manufactured was only for personal consumption.  This theory was continuously pressed during appellant's closing argument.  In reply,  the State pointed out that appellant had all the parts necessary to distribute methamphetamine. Further, appellant had, in fact, entered a plea of *nolo contendere* to possession with intent to distribute methamphetamine.  This leads to the complained-of argument, wherein the State makes a generic reference to what a person does with methamphetamine that they have manufactured, specifically that they distribute it.  In describing who the contraband

would be distributed to, the State's attorney did not single out children, rather he asked the jury to consider who the methamphetamine would be distributed to. When placed in the context in which the argument arises, this rhetorical question was a proper plea for law enforcement. See Lagrone, 942 S.W.2d at 619. Inasmuch as we have determined that the argument was not improper, the failure to object to that argument could not be evidence of ineffective assistance of counsel. See McFarland, 928 S.W.2d at 500.

Failure to Preserve Prosecutorial Misconduct

Appellant's final contention regarding ineffective assistance of counsel deals with a comment made by the State's attorney while giving the State's opening summation. The State's attorney stated that there were two counts in the case before the jury and that any sentence that the jury would give appellant would run concurrently. Appellant's counsel objected to this statement and the trial court sustained the objection and, consistent with appellant's request, instructed the jury to disregard the comment. There was no request for a mistrial. Appellant now contends that the failure to request a mistrial was ineffective assistance of counsel because nothing has been preserved for appeal. See Del Carmen Hernandez v. State, 219 S.W.3d 6, 14 (Tex.App.–San Antonio 2006), aff'd, PD-1879-06, 2008 Tex.Crim. App. LEXIS 1304 (Tex.Crim.App. Oct. 15, 2008).

The failure of appellant's counsel to request a mistrial could only be termed an act of ineffective assistance of counsel if a mistrial should have been granted. The granting or denying of a mistrial is within the discretion of the trial court. See Kipp v. State, 876 S.W.2d 330, 339 (Tex.Crim.App. 1994). A trial court abuses its discretion when its action

or decision is not within the zone of reasonable disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g). Mistrial is an extreme remedy for prejudicial events occurring during the trial process. See Bauder v. State, 921 S.W.2d 696, 698 (Tex.Crim.App. 1996), rev'd on other grounds, Ex parte Bauder, 974 S.W.2d 729 (Tex.Crim.App. 1998). Finally, mistrial is used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. See Wood v. State, 18 S.W.3d 642, 648 (Tex.Crim.App. 2000). A trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. Id. The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. Id. Further, the law presumes that a jury will follow a trial court's instruction to disregard and that such instruction is sufficient to cure any issue raised by the improper jury argument. See Corwin v. State, 870 S.W.2d 23, 37 (Tex.Crim.App. 1993).

An examination of the record reflects that the trial court, during discussions of the court's charge on punishment, stated that a jury considering punishment in a multiple count indictment case would usually send out a question about whether the sentences would be served concurrently or consecutively. The trial court proceeded to advise the parties that he would have no issue if either side were to advise the jury that the sentences would run concurrently. Appellant's counsel objected to this procedure and the trial court stated, "If you object, we'll leave it out." Appellant's counsel stated, "I object to it." To which the trial court stated, "Okay."

14

Subsequently, during opening argument, the State's attorney made the objected to argument. The record reflects that was the only time that the topic was mentioned before the jury. Further, the record demonstrates that, even though appellant was facing up to 99 years or life imprisonment on each count, the jury assessed 30 years imprisonment. Based upon these facts, we cannot say the denial of a motion for mistrial would have been error by the trial court. See Wood, 18 S.W.3d at 648. Accordingly, the failure to request a mistrial was not an act of ineffective assistance of counsel. See McFarland, 928 S.W.2d at 500.

Appellant next argues that the cumulative effect of the four prior allegations of ineffective assistance of counsel prejudiced his right to a fair trial. However, having determined that none of the four acts complained of were, in fact, acts of an ineffective counsel, appellant's rights were not prejudiced. Accordingly, appellant's issue on alleged ineffective assistance of counsel is overruled.

## Double Jeopardy

Appellant's first issue contends that his convictions for possession with intent to distribute methamphetamine and manufacturing methamphetamine are, in fact, attempts to punish appellant twice for the same offense. After analyzing the statute under which appellant was charged, both the appellant and the State agree that there was but one offense.[6] Having reviewed the statute, we agree that punishing appellant for the manufacture and possession with intent to distribute the same cache of drugs does violate

---

[6] See TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2002).

15

appellant's protection from being punished twice for the same offense.  See U.S. CONST. amend. V; Lopez v. State, 108 S.W.3d 293, 302 (Tex.Crim.App. 2003).[7]

The remedy when a violation of the double jeopardy clause has occurred is to vacate the lesser sentence and retain the greater sentence.  See Ex parte Cavazos, 203 S.W.3d 333, 337 (Tex.Crim.App. 2006).  In the case before the court, both offenses were punished by confinement for a period of 30 years.  Additionally, both are first degree felony offenses.  Therefore, we are to retain the conviction on the offense charged first.  See Ex parte Drake, 883 S.W.2d 213, 216 (Tex.Crim.App. 1994).  Accordingly, the judgment of conviction as to Count III of the original indictment, for the offense of manufacturing methamphetamine less than 400 grams but at least 200 grams, is vacated.

## Conclusion

We vacate the trial court's judgment for the offense of manufacturing methamphetamine and affirm the judgment of the trial court for the offense of possession with intent to distribute methamphetamine.

Mackey K. Hancock
Justice

Publish.

---

[7] Texas Health and Safety Code section 481.112 identifies a continuum in the line of drug distribution.  No matter where along this line the actor is apprehended, he may be prosecuted.  However, even though the actor may progress along the continuum and, therefore, commit multiple prohibited acts under the statute, if each of those acts relates to one transaction, then the actor may only be prosecuted for the one single offense.  Id. at 297-302.