

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00275-CR

Enrique **ZAMORA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR0494
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  March 13, 2013

AFFIRMED

Enrique Zamora was convicted by a jury of two counts of aggravated assault with a deadly weapon.  On appeal, Zamora contends the trial court erred in admitting evidence of extraneous offenses as contextual evidence, the State violated a motion in limine, and trial counsel rendered ineffective assistance of counsel.  We overrule Zamora's contentions and affirm the trial court's judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

Zamora was charged with four counts of aggravated assault with a deadly weapon. In two of the counts, Zamora was charged with offenses that allegedly occurred on or about October 30, 2010 involving complainants Crystal Perez and Marcello Cruz. In the other two counts, Zamora was charged with offenses that allegedly occurred on or about November 1, 2010, involving the same two complainants. A jury found Zamora guilty of the counts that occurred on or about October 30, 2010, but acquitted him of the other two counts.

The extraneous offense evidence which is the focus of Zamora's complaints on appeal was introduced through two witnesses. The following details the relevant testimony of the two witnesses.

Crystal Perez testified that she knew Zamora in elementary and middle school but lost contact with him in high school. In 2005 or 2006, Perez and Zamora began writing letters to each other,[1] and they later began living together at Zamora's mother's house on August 4, 2010. Perez testified that the relationship started "going bad" when she discovered Zamora's possessiveness. Three weeks after Perez began her relationship with Zamora, she discovered that she was five to six weeks pregnant. Perez told Zamora she was only three weeks pregnant because she was afraid of him and scared to tell him the baby was not his. On October 23, 2010, Perez told Zamora she no longer wanted to live with him and that the baby was not his. Zamora told her "if he couldn't have [her] no one else could have [her]." Zamora also told her "that he could kill [her] and get rid of [her] body [and] nobody would even know." After arguing for a few hours, Perez told Zamora she needed to pick up her son. Zamora refused to let Perez leave by herself. Instead, he drove her around town until he had to stop for gas. When Zamora

---

[1] The trial court granted a motion in limine regarding any references to Zamora being in prison at that time.

stopped, Perez exited the car and called her dad to pick her up. A few days later, Zamora returned Perez's car to her.

On October 30, 2010, Perez was eating at a restaurant with her son. Zamora appeared at the restaurant and sat with them. Perez testified that Zamora knew where she was because he followed her around. Zamora again told Perez that "if he couldn't have [her] nobody else could." Later the same day, Perez and her new boyfriend, Marcello Cruz, drove to a Church's restaurant. As Perez was exiting the parking lot, Zamora arrived in a truck. Upon seeing Perez, Zamora drove his truck head-on into the front driver's side of Perez's car, pushing the car back into the parking lot. Zamora reversed and drove into Perez's car two more times, pushing her car into a post by a trash dumpster. After Perez exited the car, Zamora drove off. Perez then drove to her dad's house and called the police. Perez, who was four months pregnant, was later taken to the hospital because she began experiencing cramping and spotting.

On October 31, 2010, Perez was at her grandmother's house when Zamora continually drove by, screeching his tires. Although Perez called the police, they told her they could not do anything since his brother also lived in the neighborhood. Around midnight, Perez and Cruz left her grandmother's house to meet some friends at a bar. Perez and Cruz exited the bar around 1:30 a.m. and were getting into Cruz's jeep when Perez saw Zamora's truck parked nearby. Zamora pulled into the parking space next to the jeep as Cruz reversed from his parking space. Zamora then ran to the jeep and pointed a gun at Perez and Cruz. Cruz drove off with Zamora chasing them. After Cruz exited the highway, Zamora caught up to him and rammed the jeep in the back, causing the jeep to spin into an intersection. Zamora hit the jeep again, and it flipped over. Zamora hit the jeep a third time, pushing it onto a sidewalk. Zamora then drove away.

Officer Maria Briggs reported to the scene on November 1, 2010. She stated it was her first time to testify before a jury, and she was nervous. Officer Briggs testified that Perez

provided most of the information about the incident. Officer Briggs was told that Zamora caused the accident. In response to whether she learned that Zamora was angry with Perez for being with someone else, Officer Briggs testified that Perez "said that pretty much — after he got out of prison that he had been following her and going to her house and he rammed her vehicle before." Defense counsel objected that the testimony was in violation of the motion in limine and asked the trial court to instruct the jury. The trial court instructed the jury to disregard Officer Briggs's answer.

### SAME TRANSACTION CONTEXTUAL EVIDENCE

In his first issue, Zamora asserts the trial court erred in allowing extraneous offense evidence to be admitted as same transaction contextual evidence. Specifically, Zamora complains about Perez's testimony regarding the threats he made to her and the testimony regarding his pointing a gun at Perez and Cruz.

Same transaction contextual evidence is evidence regarding the context in which a criminal act occurs and recognizes that "events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Same transaction contextual evidence is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (internal citation omitted). Such necessity can be shown where: (1) several crimes are connected so that they form an indivisible criminal transaction; or (2) the evidence tends to establish some evidentiary fact, such as motive or intent. *See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *McDonald v. State*, 148 S.W.3d 598, 602 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 179 S.W.3d 571 (Tex. Crim. App. 2005). A trial

court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *Devoe*, 354 S.W.3d at 469.

With regard to Perez's testimony about Zamora's threats, this testimony was necessary for the jury to understand Zamora's motive for the actions he took when he saw Perez with Cruz. Similarly, Zamora threatened Perez and Cruz with a gun immediately before the car chase that ended with the second alleged aggravated assault. Zamora's threat with the gun was intermixed or connected with the second alleged aggravated assault because narrating the events leading to the second alleged aggravated assault would be impracticable without describing the manner in which the interaction started. *See McDonald*, 148 S.W.3d at 602. Because Zamora's threat with the gun began the chain of events ending in the second alleged aggravated assault, the jury had a right to hear the testimony to realistically evaluate the evidence. *See Wesbrook*, 29 S.W.3d at 115. Accordingly, we hold the trial court did not abuse its discretion in admitting the testimony in question. Zamora's first issue is overruled.

### VIOLATION OF MOTION IN LIMINE AND INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Zamora complains that the State violated the motion in limine the trial court previously granted regarding evidence about Zamora's prison time. To preserve error regarding the admission of evidence in violation of a motion in limine, the preferred procedure is: (1) a timely, specific objection; (2) a request for an instruction to disregard; and (3) a motion for mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004); *Westmoreland v. State*, 174 S.W.3d 282, 290 (Tex. App.—Tyler 2005, pet. ref'd). Although the foregoing "sequence is not essential to preserve complaints for appellate review," "a timely, specific request that the trial court refuses" is essential. *Young*, 137 S.W.3d at 69. In this case, defense counsel failed to move for a mistrial after the trial court instructed the jury to disregard Officer Briggs's testimony

about Zamora being in prison; therefore, error was not preserved because no timely, specific request was made that the trial court refused. *Id.* Zamora's second issue is overruled.

In his third issue, Zamora asserts defense counsel was ineffective in failing to move for a mistrial in order to preserve error. "The failure of appellant's counsel to request a mistrial could only be termed an act of ineffective assistance of counsel if a mistrial should have been granted." *Weinn v. State*, 281 S.W.3d 633, 641 (Tex. App.—Amarillo 2009), *aff'd*, 326 S.W.3d 189 (Tex. Crim. App. 2010). A trial court's decision to grant or deny a mistrial is reviewed under an abuse of discretion standard. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Berkley v. State*, 298 S.W.3d 712, 714 (Tex. App.—San Antonio 2009, pet. ref'd). A mistrial is an extreme remedy of last resort used to halt trial proceedings when error is so prejudicial that it is incurable and an impartial verdict cannot be reached. *Berkley*, 298 S.W.3d at 714; *Weinn*, 281 S.W.3d at 642. "The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case." *Weinn*, 281 S.W.3d at 642. The law presumes a jury will follow a trial court's instruction to disregard and that such instructions are sufficient to cure improprieties that occur during trial. *Gamboa*, 296 S.W.3d at 580; *Berkley*, 298 S.W.3d at 714.

In the instant case, Officer Briggs inadvertently referred to Zamora's prison time once during her testimony, and the trial court immediately instructed the jury to disregard the reference. The State did not refer to the testimony in closing, and the jury's verdict indicates that the jury carefully considered the testimony regarding the alleged offenses. "Nothing in the record demonstrates the comment had any harmful effect or that the jury was unable to follow the trial court's instruction" to disregard. *Berkley*, 298 S.W.3d at 714. Under these circumstances, a mistrial would not have been warranted. Accordingly, defense counsel's failure to move for a mistrial did not constitute ineffective assistance. *Weinn*, 281 S.W.3d at 641.

Moreover, it appears from the record that defense counsel's failure to move for a mistrial was an isolated error that generally will not warrant a finding of ineffective assistance. *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012). Finally, the record is silent regarding defense counsel's reason for not moving for a mistrial. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (silent record fails to rebut presumption of reasonable professional assistance). Perhaps defense counsel believed the motion would be denied and preferred to have the jury remember the trial court's instruction to disregard as opposed to the denial of a mistrial. Because the record is silent, however, we may not speculate regarding trial counsel's motivation. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) ("Ineffective assistance of counsel claims are not built on retrospective speculation…"). Zamora's third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH