Glenn Edwin RUNDLES, Appellant

v.

The STATE of Texas, Appellee

No. 06–15–00074–CR

Court of Appeals of Texas,
Texarkana.

Submitted: December 22, 2015

Decided: March 15, 2016

Don Biard, McLaughlin, Hutchison & Biard, LLP, Paris, TX, for appellant

Gary D. Young, Lamar County & District Attorney, Paris, TX, for appellee

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

In January 2014, Glenn Edwin Rundles was charged under two separate indictments with burglary of a habitation [1] and aggravated robbery.[2] Each indictment contained an enhancement paragraph alleging a prior felony conviction, resulting in enhancement of the punishment range in each case.[3] In the course of pretrial

---

[1]. Rundles' burglary of a habitation charge was filed under trial court cause number 25636, and his conviction of this crime is on appeal under the instant cause number.

[2]. Rundles' aggravated robbery charge was filed under trial court cause number 25637, and his conviction of this crime is on appeal under our cause number 06–15–00075–CR. Because Rundles raised identical issues in both cases, he filed a single, consolidated

brief addressing both offenses. Consequently, this opinion also addresses the issues stemming from Rundles' conviction for aggravated robbery.

[3]. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp.2015). The enhancement paragraph in both indictments alleged that "on June 30, 2000, in Cause Number F-0071261 in the 195th District Court of Dallas County, Texas,

proceedings,[4] Rundles brought the issue of his competence to stand trial to the court's attention, which eventually culminated in a hearing before a jury. At the competency hearing, the State asked the trial court to grant a directed verdict requiring the jury to make a finding that Rundles was competent to stand trial. The trial court granted the State's request and, as ordered, the jury returned a verdict finding Rundles competent.

Rundles subsequently waived his right to a jury trial and entered open guilty pleas in both cases. After the trial court found him guilty of both offenses, Rundles entered true pleas to the enhancement paragraphs in the two indictments. The trial court found the enhancement paragraphs to be true and, following a bench trial on punishment, sentenced Rundles to life in prison for each offense, ordering the sentences to run concurrently.

On appeal, Rundles presents three issues, all of which relate to his competency hearing. Rundles asserts that (1) the trial court had no legal authority to grant the State's motion for a directed verdict, and by doing so, the trial court violated his statutory and constitutional rights to have the jury decide the issue of his compe-

tence; (2) even if the trial court had possessed such authority, a material fact issue existed regarding his competence to stand trial and, therefore, the trial court erred when it granted the State's motion for a directed verdict; and (3) the trial court erred when it admitted evidence during Rundles' competency hearing regarding his plea negotiations with the State. For the reasons set forth below, we affirm the trial court's judgment.

## I. Background

On July 16, 2014, Rundles filed a motion asking the trial court to order a psychiatric examination to evaluate his competence to stand trial. The trial court granted the motion and ordered Rundles to submit to an examination to be administered by Dr. David Bell. Following the examination, Bell concluded that Rundles was incompetent to stand trial.[5] The parties neither requested a jury on the issue of competence nor opposed Bell's finding of incompetence. The trial court entered a judgment finding Rundles incompetent to stand trial at that time [6] and committed him to the North Texas State Hospital–Vernon Campus (Vernon) for a period not to exceed 120 days.[7] Dr. Michele Borynski, the

---

the defendant was finally convicted of the felony offense of Aggravated Robbery."

4. Although the trial court did not consolidate Rundles' cases into one cause number, it did consolidate the cases for purposes of pretrial proceedings, Rundles' competency hearing, the plea proceedings, and his punishment trial.

5. "A person is incompetent to stand trial if [he] does not have: (1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." TEX.CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2006).

6. It is unnecessary to hold a trial on the issue of a defendant's incompetency "if: (1) neither

party's counsel requests a trial on the issue of incompetency; (2) neither party's counsel opposes a finding of incompetency; and (3) the court does not, on its own motion, determine that a trial is necessary to determine incompetency." TEX.CODE.CRIM. PROC. ANN. art. 46B.005(c) (West 2006).

7. When a trial court determines that a defendant who has been charged with a felony offense is incompetent to stand trial, it may commit the defendant to a mental health facility for "a period of not more than 120 days" for additional examination and treatment for the express objective of restoring his competence to stand trial. Act of May 24, 2011, 82d Leg., R.S., ch. 822, § 11, 2011 Tex. Gen. Laws 1894, 1898 (amended 2015) (current version at TEX.CODE CRIM. PROC. ANN. art. 46B.073(b)(2) (West Supp.2015)).

chief psychologist of the Competency Program at Vernon, ultimately determined that Rundles had attained his competence to stand trial. Rundles disagreed with that determination, and upon his return to the trial court, he requested a hearing before a jury to determine whether his competence to stand trial had been restored.[8]

Pursuant to Rundles' request, the trial court held a hearing on April 8, 2015, before a jury to address the issue of Rundles' competence to stand trial. After the close of Rundles' case, the State moved for a directed verdict, asking the trial court to direct the jury to enter a finding of competence. Rundles objected to the State's motion, and at that juncture, the trial court denied the State's request; however, the trial court informed the State that it could renew its motion after the close of its case. The State offered one witness, closed its case, and again asked the trial court to direct the jury to find Rundles competent to stand trial. The trial court granted the State's motion and instructed the jury to find Rundles competent.

## II. Competency Hearing Evidence

In this case, Borynski, the Director of the facility where Rundles was sent for competency restoration, provided the trial court with an opinion that Rundles' competence had been restored. Therefore,

Rundles had the burden of proving by a preponderance of the evidence that notwithstanding Borysnki's findings, he remained incompetent to stand trial. *See* TEX.CODE CRIM. PROC. ANN. art. 46B.113(d) (West Supp.2015).

Bell was called to testify by Rundles. Bell testified that he first interviewed Rundles regarding his competence to stand trial prior to his stay at Vernon. When asked about his initial opinion that Rundles was incompetent and needed assistance in regaining his competence, Bell stated,

My question was whether he was malingering or not, if he was telling the truth. I leaned toward thinking that he was malingering, that he was making this up because if a person can remember a lot of details about things in their lives but then there are certain areas—anything that had to do with any mental-health treatment or anything like that, he just would simply say he couldn't remember. Or like the alleged—maybe going to a psychiatric hospital. He didn't know why he was there. He didn't know where it was and, yet, he knew kind of where everything else was. So he didn't fit.

But I don't ever want to say someone's competent and have them to go to trial when they're not competent. So by saying that a person is not competent to

8. When the head of the facility determines that the defendant has attained competency, he or she must send a report to the trial court, with copies provided to both parties. TEX. CODE.CRIM. PROC. ANN. art. 46B.079(b)(1)(c) (West Supp.2015)). The defendant will then be returned to the committing trial court. TEX.CODE.CRIM. PROC. ANN. art. 46B.081 (West Supp.2015). Prior to the trial court continuing the criminal proceedings against a defendant, there must be a judicial determination that the defendant is competent to stand trial. TEX.CODE.CRIM. PROC. ANN. art. 46B.084(a–1)(1) (West Supp.2015). In the event one of the parties objects to the determination that the defendant has been restored to competency, the trial court must hold a hearing. TEX.CODE. CRIM. PROC. ANN. art. 46B.084(b) (West Supp. 2015)). The trial court shall hold the hearing and make the determination of whether the defendant has been restored to competency; however, a hearing before a jury is required on motion by the defendant, defense counsel, the State, or the trial court. TEX.CODE.CRIM. PROC. ANN. art. 46B.084(b). We note that portions of the statutes cited above have been amended since the time of Rundles' competency hearing; however, as the substance of the statutes remained the same, we cite to the current versions.

stand trial, in his case, and in a lot—or in a few cases I could say, well, I'm going to, basically, punt, have him go to Vernon, they'll watch him 24 hours a day.

When asked, "[Rundles is] not—you found him not competent and you have no reason to change that evaluation, do you?" Bell responded, "Well, I mean I did read [Dr. Borynski's report]. There's a lot of evidence in that report that I read that's—that would make me to say that he's competent." When asked by the State on cross-examination, "Mr. Rundles is competent, isn't he?" Bell responded, "Yes."

The State's witness, Dr. Borynski, testified consistent with her report that Rundles was competent to stand trial. The State then rested, and Rundles' did not present any rebuttal evidence. At that point, the trial court granted the State's motion and instructed the jury to return a finding that Bell was competent to stand trial.[9]

9. The trial court gave the following instruction to the jury:

Ladies and gentlemen of the jury, the County Attorney's office has asked me to order you to enter a verdict of competency in this case. The law allows me to do that when there is no evidence of incompetency. As the Defendant sits there today he is presumed competent to stand trial. So if I believe the evidence shows that he remains competent or if I believe the evidence shows that there is no evidence of incompetency I can order you to direct a verdict that the Defendant is competent.

Based on the competent evidence that we have heard this morning, I'm going to direct you to enter the verdict that the Defendant is, in fact, competent to stand trial.

I have prepared the verdict form for your consideration. When you go back there the only question that's going to be asked of you is do you find from a preponderance of the evidence that the Defendant is presently competent to stand trial. I am directing and ordering you to find that he is competent. You would answer we do.

## III. The Parties' Positions

Rundles contends that the trial court erred when it granted the State's motion for a directed verdict because (1) the Texas Constitution and the Texas Code of Criminal Procedure afford him the absolute right to have a jury decide the issue of his competence, and (2) a fact issue existed. The State responds, among other things, that Rundles waived his right to appeal this issue because (1) he failed to make a proper objection[10] and (2) even if we considered the objection to be proper, it was untimely. The State also argues that, even if Rundles' issues are preserved, the directed verdict was proper because there was no evidence creating a fact issue for the jury to decide.

## IV. Analysis

### A. Rundles' First Point of Error—Whether the Trial Court Had Legal Au-

I'm going to send you back to the jury room here in a moment. I'm going to ask that when you get back there you select a presiding juror or foreman. Have that [p]residing [j]uror then consider my order and have that presiding juror then make a finding that this Defendant—that you-all make a finding the Defendant is competent to stand trial and your presiding juror then return into court with this verdict.

So once again, I'm instructing you to go back and find that we do find that the Defendant is competent because there is no credible evidence that he is, in fact, incompetent. So I'm going to turn you over to the custody of my bailiff. He's going to take you to the jury room and we await your verdict.

10. The State contends, in part, that Rundles' statement that he "wishe[d] to appeal" was not a valid objection for linguistic reasons. We find it unnecessary to address this particular issue because there are at least two other grounds upon which his statement, which we will refer to as his "second objection," failed to preserve error on appeal.

**thority to Grant a Directed Verdict in a Competency Trial**

### 1. Introduction

Rundles first argues that the trial court erred in granting a directed verdict because Texas' Constitution and Code of Criminal Procedure grant him an absolute right to a jury trial such that a trial court may never grant a directed verdict in a competency trial. Rundles equates the granting of a directed verdict in favor of the State in a competency trial to the granting of a directed verdict in favor of the State in a criminal trial. Because a trial court cannot grant a directed verdict in favor of the State in a criminal trial, Rundles concludes that the trial court cannot grant a directed verdict in favor of the State in a competency trial. The State argues that Rundles failed to preserve this point of error by not objecting in the trial court or filing a motion for new trial and that the use of a procedural device in a jury trial, such as a directed verdict, is not inconsistent with the right to trial by jury.

### 2. Preservation of Error

 In a criminal case, the right to trial by jury may not be forfeited by failing to object, but can only be waived. *See McLean v. State,* 312 S.W.3d 912, 915 (Tex.App.—Houston [1st Dist.] 2010, no pet.) (holding that right to trial by jury may not be forfeited by failing to timely object but can only be waived and that "violations of 'rights which are waivable only' . . . enable the appellate court to hear a complaint without a proper trial objection") (quoting *Aldrich v. State,* 104 S.W.3d 890, 895 (Tex.Crim.App.2003)). In a civil case, however,

> [a]lthough the right to a jury trial exists as a matter of constitutional law, the right in a civil case is not self-executing: to invoke and perfect the right to a jury

trial in a civil case a party must first comply with the requirements of rule 216. *See* Tex.R. Civ. P. 216; *Mackay v. Charles W. Sexton Co.,* 469 S.W.2d 441, 445 (Tex.Civ.App.—Dallas 1971, no writ). Once perfected, however, the right to a jury trial still may be waived. The right may be waived expressly or by a party's failure to act. For example, a party waives a perfected right to a jury trial by failing to appear for trial. *See* Tex.R. Civ. P. 220; *Hall v. C–F Employees Credit Union,* 536 S.W.2d 266, 267 (Tex.Civ.App.—Texarkana 1976, no writ). Similarly, when one party has perfected the right to a jury trial, any other party waives the benefit of the perfected right by failing to object to the case being withdrawn from the jury docket. *See* Tex.R. Civ. P. 220; *Green v. W.E. Grace Mfg. Co.,* 422 S.W.2d 723, 726 (Tex.1968). If a party may waive a perfected right to a jury trial by its own inaction, it follows that a party may waive by inaction the right to complain on appeal that the trial court deprived it of its perfected right.

*Sunwest Reliance Acquisitions Grp., Inc. v. Provident Nat'l Assurance Co.,* 875 S.W.2d 385, 387–88 (Tex.App.—Dallas 1993, no pet.).

 We have previously held that competency proceedings are more civil in nature despite the fact that they involve individuals who have been charged with criminal offenses. *Parker v. State,* 667 S.W.2d 185, 187 (Tex.App.—Texarkana 1983, pet. ref'd); *see also Morales v. State,* 801 S.W.2d 624, 626 (Tex.App.—Dallas 1990), *aff'd,* 830 S.W.2d 139 (Tex.Crim. App.1992) (per curiam). A hearing on competency to stand trial is not a criminal action because there is no determination of guilt/innocence, "but it is quasi-criminal in a sense that a finding of competency is a necessary prerequisite to subjecting the

accused to a criminal trial for the offense charged." *Jackson v. State*, 548 S.W.2d 685, 690 (Tex.Crim.App.1977). In proceedings that involve the issue of competency, "[l]ogic dictates that the civil rules should apply." *Morales*, 801 S.W.2d at 625.

■ Accordingly when, as here, the appellant challenges the legal authority for the trial court to ever grant a directed verdict, the appellant must make a specific and timely objection to preserve that issue. *See* Tex.R.App. P. 33.1. Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex.R.App. P. 33.1(a)(2). The purpose of requiring a party to make a specific objection is (1) to give the court the opportunity to rule on the objection and (2) to give opposing counsel the chance to respond to the complaint. *Id.* As the Court of Criminal Appeals explained in *Resendez v. State*,

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the

trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex.Crim.App.2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992)).[11]

### a. Timeliness

The State initially moved for a directed verdict at the close of Rundles' case, at which time Rundles essentially agreed with the State's position. Following a recess, the trial court asked Rundles if he objected to the State's motion. Rundles answered, "Yes sir[,]" but he failed to offer a basis for his objection. Rundles' first objection appears to have been made in a timely fashion. Following his objection, the trial court denied the State's motion for a directed verdict, adding that it would allow the State to re-urge its motion after the presentation of its evidence.[12]

■ The State renewed its motion for a directed verdict at the close of its case and

---

11. This case does not present the exact factual scenario examined in the civil cases cited above. Unlike those cases, the trial court in this case did not completely deprive Rundles of a trial by jury. Rather, the trial court impaneled a jury and allowed Rundles to present his evidence to it. Accordingly, Rundles does not complain that the trial court failed to grant him a jury trial at all, but that the trial court lacked the legal authority to take the decision away from the jury via a directed verdict. Yet, the principle supporting the rule in those cases is the same. Had Rundles timely objected to the trial court's action, the trial court could have allowed the matter to go to the jury and reconsidered the issue after the verdict, if necessary. Thus, Rundles had an opportunity to object to the trial court's action at a time when the trial court still could have acted. Because the civil rule applies to this case and because under that rule a defendant can waive his right to

trial by jury by failing to object, Rundles was required to preserve his point by timely and specifically objecting.

12. The record does not reflect an express ruling by the trial court regarding Rundles' first objection. We may presume, however, that the trial court implicitly sustained his first objection by denying the State's motion at that juncture. *See* Tex.R.App. P. 33.1(a)(2). Even if we assume the trial court chose to delay its ruling on Rundles' first objection until after the State presented its evidence, his first objection fails as a prerequisite to presenting a complaint for our review because Rundles (1) failed to state the specific grounds upon which he based his first objection, and (2) the grounds for his first objection are not apparent from its context. *See* Tex.R.App. P. 33.1(a)(1).

asked the trial court to direct the jury to find Rundles competent to stand trial. At the beginning of its fairly lengthy statement to the jurors, the trial court made it clear that it intended to grant the State's request. At the conclusion of the court's statement, Rundles stated that he "wishe[d] to appeal."

The State contends that Rundles' second objection was not timely because he did not assert it at the earliest possible opportunity. Rundles did not make his second objection immediately after the State renewed its motion for a directed verdict. Instead, he waited until after the trial court (1) explained what a motion for a directed verdict is, (2) stated that it intended to grant the State's motion, (3) explained why it was granting the motion, (4) instructed the jury to return with a verdict that Rundles was competent to stand trial, and (5) instructed the jury to leave the courtroom. Only then did Rundles state that he "wishe[d] to appeal" the trial court's ruling.

In order for Rundles' second objection to have been timely, he must have asserted it at the earliest possible time. See TEX. R.APP. P. 33.1(a)(1). Rundles failed to assert his second objection at the first available opportunity, and therefore, it was untimely.

### b. Basis for Objecting

■ In addition to the timeliness issue, Rundles also failed to state any basis for his objection. See TEX.R.APP. P. 33.1(a)(1). While we may consider the basis of an objection if it is apparent from the context,[13] there are multiple bases upon which a party may argue for the denial of a motion for a directed verdict. In fact, on appeal, Rundles asserts two detailed arguments that he did not raise to the trial court, namely, (1) that the trial court's ruling effectively took the decision out of the jury's hands, thereby violating his constitutional and statutory rights to a trial by jury and (2) that a material issue of fact existed prohibiting the trial court from granting the State's request. The law is clear that a "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim.App.2002). We can find nothing in either Rundles' first or second objections during the hearing that remotely comports with his arguments on appeal.

### c. Summary

■ To summarize, then, Rundles stated no basis for either his first or second objection, and his second objection was untimely. Thus, Rundles waived any complaint he might have had regarding the trial court's legal authority to grant the State's motion for a directed verdict.[14]

13. *See* TEX.R.APP. P. 33.1(a)(1).

14. Additionally, even if Rundles had properly objected, his assertion that a trial court can never grant a directed verdict in favor of the State in a competency trial is simply incorrect. Rundles maintains that the trial court's order granting the State's motion for a directed verdict in this case was akin to the granting of a motion for a directed verdict in favor of the State during the guilt/innocence portion of a criminal trial. Rundles confuses the parties' burdens of proof in criminal cases and competency trials. Specifically, the Due Process Clause of the United States Constitu-

tion requires that a criminal conviction be supported by a rational trier of fact's findings that the accused is guilty of every essential element of an offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, during the guilt/innocence phase of a criminal trial, a defendant is presumed innocent, and the State must prove that the defendant committed every element of the charged offense beyond a reasonable doubt.

Conversely, during a competency hearing, a defendant is presumed to be competent, and the burden of proof rests squarely on the

For the reasons above, Rundles' first point of error is overruled.

## B. Rundles' Second Point of Error—Whether the Trial Court Erred in Granting a Directed Verdict Because a Fact Question Existed

### 1. Introduction

Rundles next argues that, even if the trial court had the legal authority to grant a directed verdict in a competency trial, the trial court erred in granting one in this case because Rundles produced sufficient evidence to require resolution of that issue by the jury. Rundles contends there was more than a scintilla of evidence to show that he was incompetent to stand trial. Specifically, he points to Bell's initial report wherein he opined that Rundles was incompetent and that, based on Bell's opinion, he was sent to a "mental institution." In addition, Rundles maintains there was evidence presented during the hearing that he was in special education classes in high school, never had a steady job, and claimed to have had an imaginary friend when he was thirty years old. Rundles also refers to evidence showing that he had a history of drug use and that, when he was seventeen years old, he was sent to a place "where 'people had on white suits and they gave him medications that made him dizzy.' " [15]

### 2. Analysis of Rundles' Second Point of Error

In civil cases, a trial court may grant a directed verdict only in limited circumstances: (1) when no evidence exists to support a material issue of fact essential to a party's right of recovery or (2) when the evidence conclusively establishes the right of the movant to judgment or negates the right of an opponent. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000). A trial court may not grant a directed verdict if more than a scintilla of evidence supports the grounds underlying the directed verdict. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex.2004). More than a scintilla of evidence exists when it rises to the level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

Article 46B.003(a) of the Texas Code of Criminal Procedure defines incompetency as the defendant's lack of "(1) sufficient *present* ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." TEX.CODE CRIM.

---

defendant's shoulders to prove that he is incompetent. *See* TEX.CODE CRIM. PROC. ANN. art. 46B.113(d) (West Supp.2015). Thus, in a competency hearing, the defendant occupies the same position that the State occupies in the guilt/innocence phase of a criminal trial. And, in criminal trials, a defendant often moves for a directed or an instructed verdict of acquittal after the State rests. *See Avery v. State*, 359 S.W.3d 230, 232 (Tex.Crim.App. 2012); *Cada v. State*, 334 S.W.3d 766, 774 (Tex.Crim.App.2011); *Jackson v. State*, 968 S.W.2d 495, 501 (Tex.App.—Texarkana 1998, pet. ref'd). Therefore, the trial court's order granting the State's motion for a directed verdict in this case was actually akin to the granting of a defendant's motion for a direct-

ed verdict at the close of the State's case-in-chief during the guilt/innocence portion of a criminal trial. Consequently, Rundles' comparison between competency hearings and criminal trials actually supports the trial court's ruling in this case.

15. When an appellant challenges the granting of a directed verdict on the basis that a fact issue existed, the appellant need not object to the directed verdict to preserve that complaint on appeal. *Solomon v. Steitler*, 312 S.W.3d 46, 56 n. 17 (Tex.App.—Texarkana 2010, no pet.). Therefore, Rundles' second point of error was not waived.

PROC. ANN. art. 46B.003(a) (emphasis added). While the evidence Rundles presented may have suggested that a question of his competence existed in the initial stages of the proceedings and that, therefore, the initial evaluation and competency restoration order were proper, it does not establish that he was incompetent following his return from Vernon State Hospital.[16] Accordingly, Rundles failed to present even a scintilla of evidence that supported his claim that he was incompetent at the time of the competency trial. The trial court did not err when it granted the State's motion for a directed verdict. Rundles' second point of error is overruled.

## V. Admission of Plea Negotiation Testimony

Citing to Rule 410 of the Texas Rules of Evidence, Rundles contends that the trial court erred when it admitted an email from Rundles' trial counsel to the State concerning the status of their plea negotiations during the competency hearing. TEX.R. EVID. 401(4).

### A. Standard of Review

In a civil proceeding, "[e]videntiary rulings are committed to the trial court's sound discretion." *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex.2007) (per curiam) (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001)). "A trial court abuses its discretion when it acts without regard for guiding rules or principles." [17] *U-Haul Int'l, Inc. v. Wal-*

*drip*, 380 S.W.3d 118, 132 (Tex.2012) (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998)). Even if a trial court errs by improperly admitting evidence, reversal is warranted only if the error was harmful. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex.2004).

When an appellate court determines whether the error was harmful, it reviews "the entire record and require[s] the complaining party to demonstrate that the judgment turns on the particular evidence admitted" or excluded. *McShane*, 239 S.W.3d at 234 (citing *Nissan Motor*, 145 S.W.3d at 144). "[I]t is not necessary for the complaining party to prove that 'but for' the exclusion of evidence, a different judgment would necessarily have resulted." *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992). The complaining party must only show "that the exclusion of evidence probably resulted in the rendition of an improper judgment." *Id.*

### B. Analysis

At the beginning of the hearing, the State offered several exhibits into evidence. Rundles complains of the admission of State's Exhibit 2, which was an email from Rundles' attorney to the State. The email showed that Rundles' attorney had spoken with him regarding the State's plea offer of seventy-five years' imprisonment, to which Rundles made a counter offer. During the hearing, Rundles objected to State's Exhibit 2, arguing that

---

16. In fact, as noted, Bell testified at trial that he originally found Rundles incompetent even though he "leaned toward thinking that [Rundles] was malingering" and that, after reading Borynski's report upon his return from Vernon State Hospital, he believed Rundles was, in fact, competent.

17. We have previously stated that competency proceedings are more civil in nature despite

the fact that they involve individuals who have been charged with criminal offenses. *See Parker*, 667 S.W.2d at 187. We note, however, that in a criminal case, we also review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim.App.2010).

evidence regarding a discussion of a plea agreement was inadmissible. The State responded that it intended to offer the email for the purpose of showing that Rundles was competent, not to demonstrate Rundles was contemplating a plea bargain with the State. The trial court overruled Rundles' objection and admitted State's Exhibit 2 into evidence.

On appeal, Rundles contends that the email containing plea negotiation discussion was inadmissible under Rule 410 of the Texas Rules of Evidence. Rule 410 prohibits the admission, in either a civil or criminal case, of statements made in the course of plea discussions with the State, that do not result in a plea of guilty or that result in a plea of guilty later withdrawn. *See* TEX.R. EVID. 410(a)(4), (b)(4). Rundles argues that "[t]he policy behind Rule 410 is the strong protection of plea bargaining, plea discussion, and plea negotiations in a criminal case" and that the rule's "protections are necessary because, (1) plea bargaining is essential to the functioning of the criminal justice system; [and] (2) the law fosters compromise and generally excludes offers of compromise[.]" Rundles' arguments fail in this case for two reasons.

First, Rule 410, by its definition, applies only in cases in which those discussions did not result in a plea of either guilty or *nolo contendre* or in cases in which such a plea is withdrawn. *Weinn v. State*, 281 S.W.3d 633, 638 (Tex.App.—Amarillo 2009), *aff'd*, 326 S.W.3d 189 (Tex.Crim.App.2010). Although Rundles contends that the statements contained in the email "did not result in a plea-bargain guilty plea," [18] the record demonstrates that Rundles actually did plead guilty to both offenses and that he did so (1) freely, (2) knowingly, (3) voluntarily, (4) with an understanding of the punishment range, and (5) with an understanding of the consequences of his plea. The record also reflects that Rundles "knowingly, freely and voluntarily waiv[ed] any and all defenses [he] may have [had]." Moreover, Rundles entered his guilty pleas without any reference to State's Exhibit 2 or to the prior objection he had made during his competency hearing. Consequently, we are unable to find, under any rationale, how the admission of State's Exhibit 2 during his competency trial undermined the policy behind Rule 410(4).

Second, Rules 44.1 [19] and 44.2 [20] of the Texas Rules of Appellate Procedure require a showing that the trial court harmed Rundles by admitting the complained-of exhibit for the jury's consideration. Here, the trial court found that there were no fact issues to be decided by the jury and directed the jury to enter a

---

**18.** We assume Rundles is referring to section seven of the written plea admonishments entitled "No Plea Agreement (Open Plea)." The paragraph states, "If you plead guilty without the benefit of a plea agreement, the plea proceeding is your trial." The admonishment continues, "Should the Court find you guilty, your punishment can be set anywhere within the range of punishment presented by law for your offense."

**19.** On appeal from a civil proceeding, "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." *See* TEX.R.APP. P. 44.1(a)(1)(2).

**20.** "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *See* TEX.R.APP. P. 44.2(a). In addition, "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *See* TEX.R.APP. P. 44.2(b).

verdict that Rundles was competent to stand trial. Thus, the jury made no decision; as a result, any reference to plea negotiations in the email could have had no effect on the jury's decision.

Consequently, the trial court did not abuse its discretion when it admitted the exhibit.

Rundles' third point of error is overruled.

## V. Conclusion

We affirm the trial court's judgment.